## 51795. BALLEW v. THE STATE.

Webb, Judge.

Claude Ballew appeals his conviction on two counts of distributing obscene materials in violation of Criminal Code § 26-2101. The conviction involved the exhibitions on November 9 and 26, 1973 at an Atlanta theatre of motion picture films entitled "Behind the Green Door." Ballew enumerates thirteen alleged errors, consolidated on argument into six issues.

1. The first is that the film is not obscene under applicable constitutional law. We were requested to make an independent appellate review of the film and make our own determination of obscenity vel non.

Our Constitution provides that both of our appellate courts are "for the trial and correction of errors of law. . ." Art. VI, Sec. II, Pars. IV and VIII (Code Ann. §§ 2-3704, 3708). There is no constitutional provision for an independent appellate determination of the weight of evidence, and it seems to have been well settled that the appellate court's review as to evidence is limited to its legal sufficiency, not its weight. *Proctor v. State,* 235 Ga. 720, 721 (221 SE2d 556); *Ridley v. State,* 236 Ga. 147 (223 SE2d 131). Even so, our Supreme Court has made de novo independent reviews of movie films to decide the constitutional fact of obscenity without reference to the "trial and correction of errors of law" constitutional limitation. *Slaton v. Paris Adult Theatre I,* 231 Ga. 312, 318 (201 SE2d 456); 413 U. S. 49 (93 SC 2628, 37 LE2d 446); *Dyke v. State,* 232 Ga. 817 (209 SE2d 166) (cert.

denied by U. S. Supreme Court April 28, 1975).

Our view has been that we are limited to a determination of whether there was sufficient evidence to support the jury's verdict. The Supreme Court ·of the United States held, however, that on appeal in an obscenity case the appellate court cannot merely decide whether there was sufficient evidence to support a finding by the jury that the material is obscene, but must review. independently the constitutional fact of obscenity and make a determination of such vel non. Miller v. California, 413 U. S. 15, 25 (93 SC 2607, 37 LE2d 419); Jenkins v. Georgia, 418 U. S. 153, 160 (6) 164 (94 SC 2750, 41 LE2d 642, 650, 652). That court held that juries do not have unbridled discretion in determining what is patently offensive, and the jury's verdict does not preclude all further appellate review of an accused's assertion that his film was protected by the First and Fourteenth Amendments.

This issue of independent review had been invoked earlier in Jacobellis v. Ohio, 378 U. S. 184, 188 (84 SC 1676, 12 LE2d 793, 798) wherein Mr. Justice Brennan stated: "Since it is only 'obscenity' that is excluded from the constitutional protection, the question whether a particular work is obscene necessarily implicates an issue of constitutional law. [Cit.] Such an issue, we think, must ultimately be decided by this Court. Our duty admits of no 'substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case.' "

Mr. Justice Brennan also said that failure to independently review would be "an abnegation of judicial supervision. . . inconsistent with our duty to uphold the constitutional guarantee."

Our own Supreme Court stated in *Dyke v. State,* 232 Ga. 817, 821, supra: "We are not bound to approve the jury's finding that this film is obscene, since it is clear the United States Supreme Court has determined that an independent appellate review must be made of the material to decide the constitutional fact of obscenity."

Our duty to uphold the constitutional guarantees is no less than that of the justices of the respective supreme courts of the United States and of this State, and although

we abhor even the suggestion of censorship we nevertheless viewed an exhibition of this film in its entirety. Our purpose was two-fold: to determine if there was sufficient evidence to support the verdict; and, in accordance with the decisions of those courts cited hereinabove (which in our opinion exceed our constitutional appellate review limitation) to decide by an independent appellate review the constitutional fact of obscenity vel non. "[T]here comes a point where this Court should not be ignorant as judges of what we know as men."[1]

Section 26-2101 (b) of the Criminal Code in effect at the time of the violations[2] provided: "Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters."

The film, considered as a whole, and applying contemporary community standards, predominantly appeals to the prurient interest. It is without redeeming social value, and it is a shameful and morbid exhibition of nudity with particular and all-encompassing emphasis on sexual acts. It goes substantially beyond customary limits of candor in representing and portraying nudity and sex. The film presents patently offensive exhibitions and representations of ultimate sexual acts and manipulations, normal and perverted. It shows unabashedly offensive and lewd views of the genitals of both male and female participants, and is replete with portrayals of individual and group acts of masturbation, cunnilingus, fellatio and sexual intercourse. It is degrading to sex. Except for the opening and a few other

---

[1]Mr. Justice Frankfurter in Watts v. Indiana, 338 U. S. 49, 52 (69 SC 1347, 93 LE 1801, 1805). See *Byrom v. Felker,* 137 Ga. App. 400 (224 SE2d 72).

[2]The law was amended in 1975 and broadens somewhat the definition of obscene materials. Ga. L. 1975, p. 498.

scenes toward the conclusion, it is rank, hard core pornography, and each exhibition in the theatre was "the public portrayal of hard-core sexual conduct for its own sake, and [presumably] for the ensuing commercial gain." Miller v. California, 413 U. S. 15, 35, supra. The film "Behind the Green Door" is obscene as a matter of constitutional law and fact, and is unprotected by the First and Fourteenth Amendments. Miller v. California, 413 U. S. 15, 23, supra; see also Liles v. Oregon, 543 P2d 698, 44 LW 3623 (cert. den. by United States Supreme Court May 3, 1976, 75-983).

2. Ballew's second contention is that the evidence was insufficient to support the verdict. We do not agree.

The film, obviously, is the best evidence of what it represents, and having been before the trial court no other affirmative evidence is necessary to determine its obscenity vel non. Examining the record and viewing a projection of the film, we conclude that the jury's determination that the picture was obscene was supported by the evidence. Paris Adult Theatre I v. Slaton, 413 U. S. 49, 56, supra; Hamling v. United States, 418 U. S. 87, 100 (94 SC 2887, 41 LE2d 590, 610). "Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodation any more than live sex and nudity can be exhibited or sold without limit in such public places." Miller v. California, 413 U. S. 15, 25, supra.

Ballew asserts, however, that the evidence was insufficient to connect him, beyond a reasonable doubt, with the exhibition of this film, "Behind the Green Door." The theatre he managed was an "adult" theatre, and the film was advertised on the marquee. He was present when the film was exhibited on the dates of his arrest. On at least one of the occasions involved herein he sold tickets, and pressed a button to allow entrance into the seating area. He checked the cash register and locked the door after each arrest.

In *Dyke v. State,* 232 Ga. 817, 822, supra, "Appellant further argues the evidence is legally insufficient to sustain his conviction for exhibition of this film because it failed to show he had control over the showing of the film or knowledge of its content. The

evidence shows that the film was advertised on the marquee of the theatre managed by appellant and that the theatre was an 'adult threatre.' Appellant was shown to be on the premises when the film was exhibited on the two separate dates charged in the accusation and, on the second occasion, appellant sold tickets for admission to see it. This was sufficient to authorize the jury to conclude that on each occasion appellant at least aided and abetted in the exhibition of the film. See Code Ann. § 26-801."

We also reject Ballew's assertion that the evidence failed to prove guilty knowledge by him of the nature of the film. Under Criminal Code § 26-2101 (a) "knowing" as used therein "shall be deemed to be either actual or constructive knowledge of the obscene contents of the subject-matter; and a person has constructive knowledge of the obscene contents if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material." See *Dyke v. State,* p. 822, and cits.

3. The next argument is that the trial judge improperly instructed the jury as to the law so as to deny him his constitutional rights guaranteed by the First, Fifth and Fourteenth Amendments. An examination of the various charges complained of, however, reveals that they as a whole comport with Criminal Code § 26-2101, and those approved in *Dyke v. State,* 232 Ga. 817, supra, and *Slaton v. Paris Adult Theatre I,* 231 Ga. 312, supra. One charge complained of was a quotation of the definition of obscene material as set forth in § 26-2101. There is no merit in this complaint.

4. Error is charged on the court's denial of Ballew's motion to suppress the motion picture film because the search warrants were issued upon affidavits allegedly insufficient to supply probable cause. This same contention was made in *Dyke v. State,* 232 Ga. 817, 823, 824, supra. The affidavits upon which the two search warrants were issued herein contain rather accurate and full factual descriptions of representative scenes on the film, and were sufficient to show probable cause for issuance of the warrants.

5. Ballew contends his conviction on two counts in

the accusation were but a single transaction and his conviction thereon violated his constitutional rights against double jeopardy as guaranteed by the Fifth Amendment and the Georgia Constitution. Interestingly, this same argument was made in *Dyke v. State*, 232 Ga. 817, 827, supra, counsel for Ballew having been counsel for Dyke.

Here, the accused was first arrested for showing the film on November 9, and the film was seized under the search warrant. The accused waived commitment hearing. Subsequently, the accused was arrested on another warrant for showing the same picture, from another copy of the film, on November 26. The statement of Justice Ingram in the *Dyke* case (232 Ga. 827, 828) is equally applicable here. "Appellant argues that the accusation charged him in two counts of violating the same statute and that the proof involved a regularly scheduled showing of a motion picture in a theatre with no disruption in scheduling. The exhibition of the film on two separate dates, appellant argues, does not permit the state to 'pyramid' the charges and punishment against him. . . but that is not the case here. There were two distinct episodes involving different dates of exhibition and even different copies of the same film. This record shows two criminal violations, not a single crime." So it is in this case.

6. Lastly, appellant complains that he was denied his right to jury trial under the Sixth and Fourteenth Amendments by being tried before a five-person jury in the Criminal Court of Fulton County.

This contention was ruled upon in *Sanders v. State*, 234 Ga. 586 (216 SE2d 838) (cert. denied by U. S. Supreme Court Feb. 23, 1976) wherein the Supreme Court said: "We reject this argument in view of Georgia authority to the contrary. See *McIntyre v. State*, 190 Ga. 872 (5) (11 SE2d 5). The Supreme Court of the United States has not determined what minimum number of jurors can still constitute a 'jury.' In Williams v. Florida, 399 U. S. 78, 92 (Fn. 28) it is observed: 'We have no occasion in this case to determine what minimum number can still constitute a "jury," but we do not doubt that six is above that minimum.' Absent a holding by the United States

Supreme Court that a five-man jury is constitutionally inadequate, we approve the constitutional minimum of five prescribed by the 1945 Constitution of Georgia for all courts except superior courts."

We find no error and affirm the trial court.

*Judgment affirmed. Deen, P. J., and Quillian, J., concur.*

ARGUED FEBRUARY 4, 1976 — DECIDED APRIL 6, 1976 — REHEARING DENIED MAY 6, 1976 —

*Gilbert H. Deitch, Michael Clutter,* for appellant.

*Hinson McAuliffe, Solicitor, Thomas R. Moran, Jr., Assistant Solicitor, Arthur K. Bolton, Attorney General,* for appellee.