Nathan GOLDSTEIN, II; Golden Distributors, Inc., A Mississippi Corporation; T.E. Lloyd; Tom Morrow; C.J. Collier; Starkville Theatres, Inc., A Mississippi Corporation; Juanita Maxey; H.B. Pankey and Terrie Pankey, A General Partnership; Frank Countryman; Richard Heard; Susan Heard; Hill City News and Novelty, Inc., A Mississippi Corporation; C. Kernell Roberts; Vincent P. Clements; Star-Satellite, Inc., A Mississippi Corporation; O.D. York; Fernwood Books and Novelty, Inc., A Mississippi Corporation; Capitol News and Novelty, Inc., A Mississippi Corporation; Louise L. Hazel; and Select Books and Novelty, Inc., A Mississippi Corporation, Plaintiffs,

v.

Bill ALLAIN, Attorney General of the State of Mississippi, et al., Defendants.

Civ. A. No. GC83-141-LS-O.

United States District Court, N.D. Mississippi.

July 20, 1983.

John H. Weston, Robert Sarno, David M. Brown, G. Randall Garrou, Brown, Weston & Sarno, Beverly Hills, Cal., W. Wayne Drinkwater, Lake, Tindall, Hunger & Thackston, Greenville, Miss., for plaintiffs.

Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

SENTER, District Judge.

The Mississippi Legislature recently enacted House Bill No. 345, an Act proscribing the distribution or possession with intent to distribute obscene materials; the law will become effective on July 1, 1983.[1] The

1. **REPORT OF CONFERENCE COMMITTEE**

MR. PRESIDENT AND MR. SPEAKER:

We, the undersigned conferees, have had under consideration the amendments to the following entitled Bill:

H.B. NO. 345

AN ACT TO PROVIDE THAT THE DISTRIBUTION OF, OR THE OFFER TO DISTRIBUTE, OR THE POSSESSION WITH INTENT TO DISTRIBUTE OBSCENE MATERIAL SHALL CONSTITUTE A MISDEMEANOR OR A FELONY, AND TO PROVIDE A PENALTY THEREFOR; TO PROVIDE THAT THE WHOLESALE DISTRIBUTION OF OBSCENE MATERIAL SHALL CONSTITUTE A FELONY, AND TO PROVIDE A PENALTY THEREFOR; TO DESCRIBE THAT MATERIAL WHICH SHALL BE CONSIDERED OBSCENE; TO PROVIDE AN AFFIRMATIVE DEFENSE TO CERTAIN PERSONS CHARGED WITH A VIOLATION OF THIS ACT; TO REPEAL SECTIONS 97–29–33, 97–29–37, 97–29–39 AND 97–29–41, MISSISSIPPI CODE OF 1972, WHICH PROVIDE CRIMINAL OFFENSES

plaintiffs have brought this action attacking the statute on a wide range of constitutional issues and request a preliminary injunction restraining the defendants from

AND PENALTIES RELATING TO THE SHOWING OF OBSCENE OR IMMORAL MOVING PICTURES, THE SALE, DISTRIBUTION OR ADVERTISING OF OBSCENE PICTURES OR INDECENT ARTICLES AND THE PUBLICATION, SALE OR DISTRIBUTION OF OBSCENE PRINTED OR WRITTEN MATERIAL, AND SECTIONS 99–31–1 THROUGH 99–31–27, MISSISSIPPI CODE OF 1972, WHICH PRESCRIBE PROCEEDINGS FOR THE COMMENCEMENT AND ADJUDICATION OF ACTIONS RELATING TO OBSCENE PUBLICATIONS; AND FOR RELATED PURPOSES.

We, therefore, respectfully submit the following report and recommendation:

1. That the Senate recede from its Amendment No. 1.
2. That the House and Senate adopt the following amendment:

AMEND by striking all after the enacting clause and substituting in lieu thereof the following:

SECTION 1. A person commits the offense of distributing obscene materials or obscene performances when he sells, rents, leases, advertises, publishes or exhibits to any person any obscene material or obscene performance of any description knowing the obscene nature thereof, or offers to do so, or possesses such material with the intent to do so. A person commits the offense of wholesale distributing obscene materials or obscene performances when he distributes for the purpose of resale any obscene material or obscene performance of any description knowing the obscene nature thereof, or offers to do so, or possesses such material with the intent to do so. The word "knowing" as used in this section means either actual or constructive knowledge of the obscene contents of the subject matter, and a person has constructive knowledge of the obscene contents if he has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material. The character and reputation of an individual charged with an offense under this act and, if a commercial dissemination of obscene material or an obscene performance is involved, the character and reputation of the business establishment involved, may be placed in evidence by the defendant on the question of intent to violate this act.

Any person, other than a city attorney, county prosecuting attorney or district attorney, who shall sign an affidavit charging an offense prescribed by this section shall file a bond in the amount of Five Hundred Dollars ($500.00) at the time such affidavit is lodged. Such bond shall be conditioned that the affidavit was not filed frivolously, maliciously or out of ill will.

SECTION 2. (1) Material or performance is obscene if:

(a) To the average person, applying contemporary community standards, taken as a whole, it appeals to the prurient interest, that is, a lustful, erotic, shameful, or morbid interest in nudity, sex or excretion; and

(b) The material taken as a whole lacks serious literary, artistic, political or scientific value; and

(c) The material depicts or describes in a patently offensive way, sexual conduct specifically defined in subparagraphs (i) through (v) below:

(i) Acts of sexual intercourse, heterosexual or homosexual, normal or perverted, actual or simulated;

(ii) Acts of masturbation;

(iii) Acts involving excretory functions or lewd exhibition of the genitals;

(iv) Acts of bestiality or the fondling of sex organs of animals; or

(v) Sexual acts of flagellation, torture or other violence indicating a sadomasochistic sexual relationship.

(2) Undeveloped photographs, molds, printing plates and the like shall be deemed obscene material, notwithstanding that processing or other acts may be required to make the obscenity patent or to distribute it.

(3) "Performance" means a play, motion picture, dance or other exhibition performed before an audience.

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

(5) "Wholesale distributes" means to distribute for the purpose of resale.

(6) "Material" means any book, magazine, newspaper, advertisement, pamphlet, poster, print, picture, figure, image, drawing, description, motion picture film, phonographic record, recording tape, video tape, or other tangible thing producing, reproducing or capable of producing or reproducing an image, picture, sound or sensation through sight, sound or touch, but it does not include an actual three-dimensional sexual device as defined in Section 3 of this act.

SECTION 3. A person commits the offense of distributing unlawful sexual devices when he knowingly sells, advertises, publishes or exhibits to any person any three-dimensional device designed or marketed as useful primarily for the stimulation of human genital organs, or offers to do so, or possesses such devices with the intent to do so. A person commits the offense of wholesale distributing unlawful sexual devices when he distributes for the purpose of resale any three-dimensional device designed or marketed as useful primarily for the stimulation of human genital organs, or offers to do so, or possesses such devices with the intent to do so.

Any person, other than a city attorney, county prosecuting attorney or district attorney,

enforcing the statute pending a full and complete hearing on the merits of the plaintiffs' claims. The court having read and considered the affidavits filed by plaintiffs, who shall sign an affidavit charging an offense prescribed by this section shall file a bond in the amount of Five Hundred Dollars ($500.00) at the time such affidavit is lodged. Such bond shall be conditioned that the affidavit was not filed frivolously, maliciously or out of ill will.

SECTION 4. (1) This act shall not apply when the distribution or wholesale distribution of the material, performance or device was made by:

(a) A person, corporation, company, partnership, firm, association, business, establishment or other legal entity to a person associated with an institution of higher learning, either as a member of the faculty or as a matriculated student, teaching or pursuing a course of study related to such material, performance or device;

(b) A licensed physician or a licensed psychologist to a person whose receipt of such material or device was authorized in writing by such physician or psychologist in the course of medical or psychological treatment or care;

(c) A person who while acting in his capacity as an employee is employed on a full-time or part-time basis by (i) any recognized historical society or museum accorded charitable status by the federal government; (ii) any state, county or municipal public library; or (iii) any library of any public or private school, college or university in this state; or

(d) A community television antenna services system or a cable television system operating pursuant to a written agreement not in conflict with this paragraph granted by a county, municipality or other political subdivision of this state, or by an employee of such system while acting within the scope of his employment, when the signal transmitting the material or performance originates outside of the State of Mississippi.

(2) Any exemption from prosecution claimed under the provisions of this section may be raised at a pretrial hearing by motion, and the court shall determine whether sufficient evidence exists to constitute an exemption from prosecution under the provisions of this act. If the motion is sustained, the case shall be dismissed; provided, however, if the motion is not sustained then the defendant may offer into evidence at trial as an affirmative defense to conviction under this act any matter which could have been raised by the defendant in the motion to dismiss.

SECTION 5. Any person, except one who wholesale distributes, who violates Section 1 or Section 3 of this act shall be guilty of a misdemeanor and, upon conviction, shall, in the case of the first offense, be fined not more than Five Thousand Dollars ($5,000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both. If the person has been previously convicted of a violation of Section 1 or Section 3 of this act or of Section 97–5–27 or 97–5–29, Mississippi Code of 1972, then the person shall be fined not less than Two Thousand Five Hundred Dollars ($2,500.00) nor more than Ten Thousand Dollars ($10,000.00) or imprisoned for a term not to exceed one (1) year, or both.

Any person who wholesale distributes in violation of Section 1 or Section 3 of this act shall, upon conviction, be fined not more than Ten Thousand Dollars ($10,000.00) or imprisoned for a term not to exceed one (1) year, or both. If the person has been previously convicted of a violation of Section 1 or Section 3 of this act or of Section 97–5–27 or 97–5–29, Mississippi Code of 1972, then the person shall, upon conviction, be fined not less than Two Thousand Five Hundred Dollars ($2,500.00) nor more than Fifty Thousand Dollars ($50,000.00) or imprisoned for a term not to exceed one (1) year, or both.

A corporation, company, partnership, firm, association, business, establishment, organization or other legal entity other than an individual convicted of distributing obscenity or unlawful sexual devices or wholesale distribution of obscenity or unlawful sexual devices shall be fined not less than One Thousand Dollars ($1,000.00) nor more than Ten Thousand Dollars ($10,000.00). If such legal entity has been previously convicted of distributing obscenity or unlawful sexual devices or wholesale distribution of obscenity or unlawful sexual devices or of a violation of Section 97–5–27 or Section 97–5–29, Mississippi Code of 1972, then such legal entity shall be fined not less than Five Thousand Dollars ($5,000.00) nor more than Fifty Thousand Dollars ($50,000.00).

SECTION 6. If any provision of this act, including any part, phrase or word of any section, or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of this act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

SECTION 7. Sections 97–29–33, 97–29–37, 97–29–39 and 97–29–41, Mississippi Code of 1972, which provide criminal offenses and penalties relating to the showing of obscene or immoral moving pictures, the sale, distribution or advertising of obscene pictures or indecent articles, and the publication, sale or distribution of obscene printed or written material, and Sections 99–31–1, 99–31–3, 99–31–5, 99–31–7, 99–31–9, 99–31–11, 99–31–13, 99–31–15, 99–31–17, 99–31–19, 99–31–21, 99–31–23, 99–31–25 and 99–31–27, Mississippi Code of 1972, which prescribe proceedings for the commencement and adjudication of actions relating to obscene publications, are hereby repealed.

together with memoranda of authorities filed by all parties, makes the following findings, to-wit:

At the present stage of the proceedings, the sole inquiries before the court are (1) whether the plaintiffs in this action have standing to challenge the constitutionality of the statute at issue; (2) whether this is a proper case in which to invoke *Younger* and/or *Pullman* abstention; (3) the propriety of preliminarily enjoining the enforcement of the statute pending a final determination of the merits of plaintiffs' challenges to the constitutionality of the statute; and (4) whether severance by this court of those words or phrases found repugnant to the Constitution would be appropriate.

## I.

■■■■ The first issue which we must address is whether the plaintiffs have alleged a case or controversy within the meaning of Article III of the Constitution. A plaintiff who challenges a statute must, in order to invoke the jurisdiction of the court, demonstrate a realistic danger of sustaining a direct injury as a result of the statutes operation or enforcement. Initially, it is important to note that:

> [T]he ordinary injury-in-fact requirement for standing is properly relaxed in the case of facial overbreadth challenges "because of the 'danger of tolerating in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping improper application. . . .' "

Anticipatory constitutional challenges should not lightly be dismissed for lack of a justiciable controversy because, as our Circuit recently observed, they "play a most vital role in modern efforts to enforce constitutional rights. . . ." *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1033 (5th Cir., 1981) (citations omitted). This is not to say, however, that a justiciable controversy is presented by all cases in which the plaintiff alleges that a statute unconstitutionally deters the exer-

SECTION 8. This act shall take effect and be in force from and after July 1, 1983.

AMEND FURTHER, by striking the title in its entirety and substituting in lieu thereof the following new title:

1. AN ACT TO PROHIBIT THE DISTRIBUTION OF, OR THE OFFER TO
2. DISTRIBUTE, OR THE POSSESSION WITH INTENT TO DISTRIBUTE OBSCENE
3. MATERIAL OR UNLAWFUL SEXUAL DEVICES; TO PROVIDE PENALTIES
4. THEREFOR; TO PROHIBIT THE WHOLESALE DISTRIBUTION OF OBSCENE
5. MATERIAL OR UNLAWFUL SEXUAL DEVICES AND TO PROVIDE PENALTIES
6. THEREFOR; TO DESCRIBE THAT MATERIAL WHICH SHALL BE CONSIDERED
7. OBSCENE; TO PROVIDE EXCLUSIONS FROM THIS ACT TO CERTAIN PERSONS;
8. TO REPEAL SECTIONS 97-29-33, 97-29-37, 97-29-39 AND 97-29-41,
9. MISSISSIPPI CODE OF 1972, WHICH PROVIDE CRIMINAL OFFENSES AND
10. PENALTIES RELATING TO THE SHOWING OF OBSCENE OR IMMORAL MOVING
11. PICTURES, THE SALE, DISTRIBUTION OR ADVERTISING OF OBSCENE
12. PICTURES OR INDECENT ARTICLES, AND THE PUBLICATION, SALE OR
13. DISTRIBUTION OF OBSCENE PRINTED OR WRITTEN MATERIAL, AND SECTIONS
14. 99-31-1 THROUGH 99-31-27, MISSISSIPPI CODE OF 1972, WHICH
15. PRESCRIBE PROCEEDINGS FOR THE COMMENCEMENT AND ADJUDICATION OF
16. ACTIONS RELATING TO OBSCENE PUBLICATIONS; AND FOR RELATED
17. PURPOSES.

CONFEREES ON THE PART OF THE HOUSE:

/s/ Stone D. Barefield
STONE D. BAREFIELD

/s/ Betty Jane Long
BETTY JANE LONG

/s/ Horace L. Buckley
HORACE L. BUCKLEY

CONFEREES ON THE PART OF THE SENATE:

/s/ Martin T. Smith
MARTIN T. SMITH

/s/ William B. Alexander
WILLIAM B. ALEXANDER

/s/ J. C. (Con) Maloney, Jr.
J. C. (CON) MALONEY, JR.

cise of a constitutional right. An anticipatory challenge to a statute's constitutionality must grow out of a "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Worker's Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citations omitted). In order to meet the injury-in-fact requirement, therefore, the plaintiffs in this action must demonstrate a realistic danger of sustaining a direct injury—that is, a realistic, rather than speculative, fear of state prosecution. In all but one instance, the plaintiffs have met this requirement. The verified affidavits of the plaintiffs clearly show that they are all persons engaged in the distribution of sexually oriented materials and that they legitimately fear state prosecutions under the challenged legislation. Thus, the plaintiffs have successfully established a case and controversy sufficient to satisfy the injury-in-fact requirement of Article III of the Constitution insofar as they challenge the statute's regulation of the distribution of published books, magazines, periodicals, films, video tapes, sexual aids or any other form of processed materials generally distributed, exhibited, sold, or rented. The plaintiffs have, however, failed to show that they are in any way involved in the processing or distribution of undeveloped photographs, molds, printing plates, and the like. As a result, the plaintiffs have failed to show any injury-in-fact which may result to them by H.B. 345 § 2(2)'s inclusion of undeveloped photographs, molds, printing plates, etc., within its definition of obscene material. Any injury which may result to the plaintiffs by the state's application of this provision is, to say the least, merely speculative. The plaintiffs thus lack standing to challenge the constitutionality of H.B. 345 § 2(2). It should be noted, however, that if plaintiffs were to be joined by persons engaged in the processing or distribution of undeveloped photographs, molds, printing plates, and the like, there is a possibility that they could succeed on their claim that § 2(2) constitutes an impermissible prior restraint.

*Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). An excellent discussion of this problem can be found in *In re Klor,* 51 Cal.Rptr. 903, 415 P.2d 191 (1966).

## II.

The next question which this court must address is, in light of the factual situation presented, would it be appropriate to invoke *Younger* or *Pullman* abstention in this action. It is clear that no state prosecutions under H.B. 345 have been brought against any of the plaintiffs, for the statute will not go into effect until July 1, 1983. *Younger* abstention, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 745, 27 L.Ed.2d 669 (1971), would not, therefore, be appropriate in this instance. "[C]onsiderations of ... comity in our federal system ... have little force in the absence of a pending state proceeding." *Lake Carriers Association v. MacMullen,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972). In addition, *Railroad Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), counsels in favor of abstention only when there is an unsettled question of state law which promises to dispose of the case without the need for constitutional adjudication. The plaintiffs have not challenged any portion of the statute on the basis of purported ambiguity. Nor have the defendants asserted any ambiguous aspect of this statute that might be saved from possible invalidation by a narrowing judicial construction. Instead, they urge abstention solely on the ground that the Mississippi courts should be given the first opportunity to review the statute. Plainly, abstention cannot be justified "merely because state courts also have the solemn responsibility equally with the federal courts" to hear and decide federal constitutional claims. *Septum, Inc. v. Keller,* 614 F.2d 456, 461 (5th Cir.1980) (citations omitted). This is especially true in a suit seeking review of a statute which will purportedly exert a chilling effect on First Amendment rights. *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1032 (5th Cir. 1981). This court, therefore, declines the

defendant's invitation to invoke *Pullman* abstention in this case.

## III.

█ This court has considered plaintiff's motion requesting a preliminary injunction restraining the named defendants from enforcing H.B. 345. The four prerequisites for issuance of a preliminary injunction are:

(1) A substantial likelihood that plaintiff will prevail on the merits; (2) a substantial likelihood that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendants; and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1979). In determining whether a preliminary injunction should issue, the court must first determine whether the plaintiffs have shown a substantial likelihood of success on the merits. In order to determine the plaintiffs' likelihood of success on the merits of this action, it will be necessary to address briefly each of their constitutional claims.

The plaintiffs allege numerous constitutional infirmities in this statute but for purposes of this preliminary injunction, their attack has focused on the following five claims:

A. The Exemptions Contained Within H.B. 345 § 4(1)(d) Violate the Free Speech and Equal Protection Guaranties of the First and Fourteenth Amendments.

█ It is well settled that a state has the power to regulate the distribution of obscene materials, for obscenity is not protected by the First Amendment. *Paris Adult Theatre v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Plaintiffs contend, however, that these exemptions are a form of preferential treatment by government among the different media of communication and are, therefore, suspect and subject to strict scrutiny. (Plaintiffs' brief at 17.) Strict scrutiny of legislative

classifications is, however, required only when the classification impermissibly interferes with the exercise of a fundamental right. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). There clearly is no fundamental right involved in the distribution of obscenity. Thus, a legislative classification which differentiates between distributors of obscenity does not interfere with or touch upon any fundamental right. Where, as here, "there is no fundamental right or suspect criteria involved, legislative classifications will be overturned only if no ground can be conceived which will justify the classification." *Piepenburg v. Cutler*, 649 F.2d 783, 787 (10th Cir.1981) (holding that similar exemptions contained within the Utah statute did not deny equal protection). The legislature's belief that the selected uses contained in § 4(1)(a), (b) & (c) are sufficiently important to outweigh enforcement considerations; and its deference to FCC regulation of interstate cable and CATV systems in § 4(1)(d) cannot be said to be either irrational or insufficient to justify such classifications. (Defendants' brief p. 16.) This court finds, therefore, that there is no substantial likelihood of success on this claim.

B. The "Constructive Knowledge" Provision of H.B. 345 Violates the First and Fourteenth Amendments.

The Supreme Court in *Hamling v. United States*, 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1973), stated that:

It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is [not] required . . . by the Constitution.

The "constructive knowledge" requirement of the Georgia statute, upon which the Mississippi provision is modeled, was subse-

1385

quently challenged in *Sewell v. State,* 238 Ga. 495, 233 S.E.2d 187, appeal dismissed 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978), and *Ballew v. Georgia,* 138 Ga.App. 530, 227 S.E.2d 65, cert. granted 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (decided on other grounds), cert. denied 436 U.S. 962, 98 S.Ct. 3083, 57 L.Ed.2d 1129 (1978), as violative of the constitutional requirements of scienter set forth in *Hamling, supra.* In both *Sewell, supra,* and *Ballew, supra,* the Georgia Supreme Court held that the "constructive knowledge" standard of scienter contained within the statute clearly comported with the constitutional requirement of scienter. In light of the Supreme Court's pronouncement in *Hamling, supra,* and given the Georgia Supreme Court's holding in *Sewell, supra,* and *Ballew, supra,* this court is of the opinion that the "constructive knowledge" provision contained in H.B. 345 comports with the constitutional requirement of scienter. As a result, we are unable to say that the plaintiff has shown a substantial likelihood of success on the merits of this claim.

    C. The Ability Under Mississippi Law of Private Citizens to Compel an Obscenity Prosecution Renders the Act Unconstitutional in Violation of the First and Fourteenth Amendments in That These Sections Mandate Initiation of a Criminal Prosecution Without Any Opportunity For a Determination of Probable Cause by a Neutral and Detached Magistrate.

Mississippi Code Annotated, §§ 99–33–1 through –3, must be read in conjunction with Mississippi Code Annotated, § 99–15–5. Section 99–15–5 was recently construed by this court, in *Crouse v. Lowndes County,* EC80–328–LS–P (N.D.Miss., February 1, 1982), to require a finding of probable cause by a neutral and detached magistrate prior to the issuance of a warrant. So read, Mississippi Code Annotated §§ 99–33–1 through –3 do not violate the First or Fourteenth Amendments. The plaintiffs thus stand no substantial likelihood of success on the merits of this claim.

    D. The Definition of Prurient Interest Contained in H.B. 345 § 2(1)(a) is Overbroad.

An enactment may be constitutionally overbroad, despite the clarity and precision of its language, if in its reach it prohibits constitutionally protected speech or conduct. *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). The United States Supreme Court in *Roth v. United States,* 354 U.S. 476, n. 20, 77 S.Ct. 1304, n. 20, 1 L.Ed.2d 1498 (1957), and *Miller v. California,* 413 U.S. 15, n. 2, 93 S.Ct. 2607, n. 2, 37 L.Ed.2d 419 (1973), attributed to the term "prurient interest" a specific judicial meaning—that of a shameful and morbid interest in nudity, sex, or excretion. Additionally, the Court's decision in *Miller, supra,* clearly established that state statutes designed to regulate obscene materials must be carefully limited in order to prevent intrusion on arguably protected areas of speech. "[N]othing that the Supreme Court has said subsequent to *Roth* would alter the restrictive definition of prurient interest contained in [footnote 20]." *U.S. v. 35 mm Motion Picture Film,* 432 F.2d 705, 711 (2nd Cir.1970). Thus "prurient interest" as judicially defined means specifically a shameful and morbid interest. *See Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1026 (5th Cir.1981). The definition of "prurient interest" contained within H.B. 345 § 2(1)(a), however, defines prurient interest as "a lustful, erotic, shameful, or morbid interest." This definition of prurient interest appears clearly to extend the prohibitions of the Mississippi obscenity statute beyond constitutionally acceptable limits. The inclusion of the terms lustful and erotic would permit the application of the statute to arguably protected materials. Such an intrusion into the area of protected speech is impermissible; for the "door barring federal and state intrusion into [the area of the first amendment freedoms] cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests." *Roth v. United States,* 354 U.S. 476, 488, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957). In light of the above discussion, it is clear that the plaintiffs have demonstrat-

ed a substantial likelihood of success on the merits of this claim.

E. The Definition of "Patently Offensive" in H.B. 345 § 2(4) Defining That Phrase in Terms of "Community Standards of Decency" Infringes Upon Speech Protected by the First Amendment.

In *Smith v. United States,* 431 U.S. 291, 305, 97 S.Ct. 1756, 1766, 52 L.Ed.2d 324 (1977), the Supreme Court stated that "community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community...." The line between protected expression and punishable obscenity must be drawn at the limits of a community's tolerance rather than in accordance with the dangerous standards of propriety and taste. *Red Bluff,* 648 F.2d at 1029. As the Fifth Circuit stated in *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1028 (5th Cir.1981), "in its effort to track the contours of permissible state regulation, the ... Legislature deviated subtly but significantly from the Miller formula in modifying the standard that fact finders must apply in deciding whether an item is 'patently offensive.'" The Legislature's modification of the contemporary community standard test of *Miller, supra,* would bring within the statute's prohibitions material which is arguably protected by the First Amendment. In light of the Fifth Circuit's statements in *Red Bluff, supra,* it would appear that plaintiffs stand a substantial likelihood of success on the merits of this claim.

From the foregoing discussion, it is clear that plaintiffs have met their burden on two of their five constitutional challenges, for they have demonstrated a substantial likelihood of success on the merits of these two claims. Having established that the plaintiffs have satisfied the first prerequisite to a preliminary injunction under *Canal Authority,* the court must now examine whether or not the remaining three prerequisites have been met.

The complaint and verified affidavits of the plaintiffs clearly demonstrate that the existence of their businesses will be threatened by enforcement of H.B. 345. They have also clearly shown that state prosecutions under this statute will have a chilling effect upon activities in which they engage which are arguably protected by the First Amendment. The plaintiffs have, therefore, met the second prerequisite of *Canal Authority,* for they have shown that they will suffer irreparable injury if the injunction is not granted. Possible interference with the ability to engage in activities arguably protected by the First Amendment constitutes irreparable injury sufficient to justify the grant of a preliminary injunction. *Henry v. First National Bank,* 595 F.2d 291, 304–05 (5th Cir.1979).

A showing of irreparable injury is, however, not alone sufficient to justify the issuance of a preliminary injunction, for under the third prerequisite of *Canal Authority,* the plaintiffs must also show that their threatened injury outweighs the threatened harm the injunction may do to the defendants. Mississippi has not had an enforceable obscenity statute since 1976 when the Mississippi Supreme Court, in *ABC Interstate Theaters, Inc. v. State,* 325 So.2d 123 (Miss.1976), struck down the obscenity statute then in force. During the intervening seven year period, the legislature has made but this one attempt to formulate and enact a statute prohibiting the distribution of obscenity. It would appear, therefore, that little harm will result to the defendants from the issuance of a preliminary injunction pending resolution of the merits of this action. In view of our ruling and in light of the fact that the legislature next meets in about six months, the legislature may decide, as a result of such an injunction, to revise the statute now at issue in order to facilitate the speedy resolution of this controversy and to provide the residents of Mississippi with a constitutionally valid and enforceable statute.

Finally, in order to obtain a preliminary injunction under *Canal Authority,* the plaintiffs must establish that the issuance of an injunction will not disserve the public interest. This the plaintiffs have clearly shown. Both the plaintiffs and the defend-

ants agree that the public has a vital interest in the vigorous exercise of First Amendment Rights. This vital interest clearly outweighs any interest which the public may have in regulating the distribution of obscenity. As a result, this court cannot say that the public interest will be disserved by the issuance of such an injunction. The plaintiff has, therefore, met the four prerequisites of *Canal Authority* and is entitled to the issuance of a preliminary injunction pending a full hearing on the merits of their constitutional claims.

### IV.

The defendants have argued that in lieu of the issuance of a preliminary injunction, this court should invoke the severability clause contained in H.B. 345 § 6. At this point in the proceedings, such an action would be inappropriate. In fact, it is doubtful that in the context of a state statute, severance would ever be an appropriate action by this court. As the Ninth Circuit stated in *Spokane Arcades Inc. v. Brockett,* 631 F.2d 135, 137 (9th Cir.1981), "[t]hat the statute has a severability clause does not authorize us to indulge in major revisions to salvage the statute.... We are certain the Legislature ... can do this better than we."

In summary, this court is not saying that Mississippi cannot have an obscenity statute. We are simply saying that it appears the statute enacted does not pass constitutional muster, and perhaps the Legislature can revise this statute so as to adequately protect first amendment rights while still regulating obscenity.

An appropriate order will be entered.