725 F.2d 482
 J-R DISTRIBUTORS, INC., Plaintiff-Appellant,
v.
Kenneth EIKENBERRY, in his official capacity as Attorney
General for the State of Washington; Donald C. Brockett, in
his official capacity as Prosecuting Attorney for Spokane
County, State of Washington, James Sloane, in his official
capacity as City Attorney for the City of Spokane,
Washington, Jeffrey C. Sullivan, in his official capacity as
Prosecuting Attorney for the County of Yakima, State of
Washington, and Fred Andrews, in his official capacity as
City Attorney for the City of Yakima, Washington,
Defendants-Appellees.
AZURE ENTERTAINMENT CORPORATION OF WASHINGTON, Plaintiff-Appellant,
v.
Kenneth EIKENBERRY, in his official capacity as Attorney
General for the State of Washington; Donald C. Brockett, in
his official capacity as Prosecuting Attorney for Spokane
County, State of Washington; and James Sloane, in his
official capacity as City Attorney for the City of Spokane,
Washington, Defendants-Appellees.
Jack R. BURNS, in his representative capacity as Executor of
the Estate of Selom F. Burns, Plaintiff-Appellant,
v.
The Honorable Kenneth EIKENBERRY, as Attorney General of the
State of Washington, in his representative
capacity only, Defendant-Appellee.
PLAYTIME THEATRES, INC., a Washington Corporation, Plaintiff-Appellant,
v.
The Honorable Kenneth EIKENBERRY, as Attorney General of the
State of Washington, in his representative capacity, only,
Donald C. Brockett, Prosecuting Attorney of Spokane County,
in his representative capacity only, and James Sloane,
Spokane City Attorney, in his representative capacity only,
Norm Maleng, Prosecuting Attorney of King County in his
representative capacity only, Defendants-Appellees.
KUKIO BAY PROPERTIES, INC., a Washington Corporation,
Plaintiff-Appellant,
v.
Norm MALENG, Prosecuting Attorney of King County, in his
representative capacity only, Defendant-Appellee.
SPOKANE ARCADES, INC., a Washington Corporation, Plaintiff-Appellant,
v.
The Honorable Kenneth EIKENBERRY, as Attorney General of the
State of Washington, in his representative capacity only,
Donald C. Brockett, Prosecuting Attorney of Spokane County,
in his representative capacity only, and James Sloane,
Spokane City Attorney, in his representative capacity only,
Defendants-Appellees.
The AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON; Madrona
Publishers, Inc., Superior Publishing Company; Washington
Library Association; Pacific Northwest Booksellers
Association; Motion Picturers Exhibitors of Washington,
Alaska, and Northern Idaho; Washington State Council of
Teachers of English; Washington Library Media Association;
and The Community College Librarian and Media Specialists
Association of Washington, Plaintiffs-Appellants,
v.
The Honorable Kenneth EIKENBERRY, as Attorney General of the
State of Washington, in his representative
capacity only, Defendant-Appellee.
 Nos. 82-3441, 82-3442 and 82-3500 through 82-3504.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 6, 1983.
Decided Feb. 6, 1984.
 
 John H. Weston, David M. Brown, G. Randall Garrou, Brown, Weston & Sarno, Beverly Hills, Cal., Carl Maxey, The Maxey Law Firm, Spokane, Wash., Jack Burns, Belleveue, Wash., Charles Stixrud, James Lowe, Seattle, Wash., for plaintiffs-appellants.
 Kenneth O. Eikenberry, Atty. Gen., Christine O. Gregoire, Deputy Atty. Gen., Olympia, Wash., for defendants-appellees.
 Richard C. Robinson, Spokane, Wash., for James C. Sloane.
 David A. Saraceno, Spokane, Wash., for Donald C. Brockett.
 Charles Hamilton, III, Deputy Prosecuting Atty., Seattle, Wash., for King County.
 Jeffrey Sullivan, Prosecuting Atty., Yakima, Wash., for Yakima County.
 Fred Andrews, City Atty., Yakima, Wash., for City of Yakima.
 Robert Eugene Smith, Encino, Cal., for Playtime Theaters and Kukio Bay Properties.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before GOODWIN, WALLACE, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Plaintiffs in these consolidated appeals challenge the constitutionality of Washington state's comprehensive anti-obscenity statute. Plaintiffs contend that various provisions of the statute are unconstitutionally overbroad or vague; that the statute's definition of obscenity varies impermissibly from that established by the Supreme Court; that the statute's penalty provisions and lack of procedural safeguards serve to chill protected first amendment expression; and that the sanctions imposed by the statute violate the eighth amendment's prohibition against cruel and unusual punishment. After a trial on the merits, the district court rejected plaintiffs' challenges and refused to enjoin enforcement of the statute. We find that the anti-obscenity statute is unconstitutional and reverse.
 
 BACKGROUND
 
 2
 In 1977 the voters of the state of Washington adopted an initiative measure that established procedures to temporarily and permanently enjoin the operation of moral nuisances. Wash.Rev.Code Secs. 7.48.050-100 (West.Supp.1980). In a decision affirmed by the Supreme Court, we found that this moral nuisance law was unconstitutional because it failed to provide procedural safeguards necessary for the protection of first amendment freedoms. Spokane Arcades, Inc. v. Brockett, 631 F.2d 135, 137-39 (9th Cir.1980), aff'd, 454 U.S. 1022, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981).
 
 
 3
 Apparently in response to the fact that the voters' initiative measure had been declared unconstitutional, the Washington state legislature enacted into law the statute that plaintiffs challenge here. This statute, known as House Bill 626,[1] establishes a dual system of civil and criminal penalties for those who maintain "moral nuisances" as defined in Section II.
 
 
 4
 House Bill 626 became effective on April 1, 1982. On April 5, 1982, plaintiffs J-R Distributors and Azure Entertainment Corporation filed separate suits in the United States District Court for the Eastern District of Washington. These suits, brought pursuant to 42 U.S.C. Sec. 1983 (Supp. IV 1980), sought declaratory and injunctive relief against the statute's enforcement. Subsequently, the five other plaintiffs filed similar law suits. All seven cases were consolidated by the district court.[2]
 
 
 5
 On April 13, 1982, the district court issued a preliminary injunction against enforcement of House Bill 626. The case proceeded to trial before the district judge, and on July 2, 1982, the court rejected plaintiffs' challenges and affirmed the constitutionality of House Bill 626. Spokane Arcades, Inc. v. Eikenberry, 544 F.Supp. 1034 (E.D.Wash.1982). Although the district judge denied plaintiffs' motion for an injunction pending appeal, he did stay his judgments to allow plaintiffs to seek a stay pending appeal from this court. Ninth Circuit Rules of Appellate Procedure, Rule 6(i). On October 13, 1982, we granted the motions of plaintiffs J-R and Azure and enjoined the enforcement of House Bill 626 pending resolution of this appeal.
 
 
 6
 We exercise jurisdiction under 28 U.S.C. Sec. 1331 (1976), because plaintiffs' claims raise federal questions, and under 28 U.S.C. Sec. 1343(3) (1976), because plaintiffs allege civil rights violations under section 1983.[3]
 
 
 7
 FACIAL CHALLENGES TO ALLEGEDLY UNCONSTITUTIONAL STATUTES
 
 
 8
 Plaintiffs' constitutional attacks on House Bill 626 were launched almost immediately after the statute became effective. Prior to trial, the district court issued an injunction against enforcement of the statute, and we have done the same for the pendency of this appeal. Consequently, Washington state, county and city officials have not yet had the opportunity to enforce House Bill 626.[4] Plaintiffs' suits thus constitute facial challenges to a statute that has yet to be authoritatively interpreted or enforced.
 
 
 9
 The Supreme Court has consistently entertained facial challenges when first amendment rights have been at stake. As Justice Marshall recently emphasized, the Supreme Court has "repeatedly recognized that a statute which sweeps within its ambit a broad range of expression protected by the First Amendment should be struck down on its face." United States v. Grace, --- U.S. ----, ----, 103 S.Ct. 1702, 1712, 75 L.Ed.2d 736 (1983) (Marshall, J., concurring in part and dissenting in part) (footnote omitted). See, e.g., United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 609-610, 87 S.Ct. 675, 687-688, 17 L.Ed.2d 629 (1967); Elfbrandt v. Russell, 384 U.S. 11, 19, 86 S.Ct. 1238, 1242, 16 L.Ed.2d 321 (1966); Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965); Thornhill v. Alabama, 310 U.S. 88, 97-98, 60 S.Ct. 736, 741-742, 84 L.Ed. 1093 (1940); Lovell v. Griffin, 303 U.S. 444, 451, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938). Specifically, the Supreme Court has upheld such overbreadth challenges in cases involving the regulation of obscenity. See, e.g., Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).
 
 
 10
 Were facial challenges not permitted, overbroad statutes would often restrict protected expression, even though they might ultimately be declared unconstitutional. To begin with, first amendment freedoms "are delicate and vulnerable," and the very "threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Unconstitutionally overbroad statutes can chill protected expression by causing "a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within [their] purview." Thornhill v. Alabama, 310 U.S. at 98, 60 S.Ct. at 742. Only by permitting facial attacks on such statutes can the unfettered exercise of first amendment freedoms be protected.
 
 
 11
 Second, facial challenges are necessary because the alternative of awaiting the outcome of individual prosecutions in state courts does not adequately protect first amendment freedoms. Aside from the enormously high costs and lengthy delays involved, see, e.g., Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. at 486-87, 490-91, 85 S.Ct. at 1120-21, 1122-23; Baggett v. Bullitt, 377 U.S. 360, 378-79, 84 S.Ct. 1316, 1326-27, 12 L.Ed.2d 377 (1964), a person thinking of engaging in protected behavior may be deterred from acting by the risk of conviction, even though his challenge to the law might eventually be upheld. Consequently, the chill on protected activity deters those whose legal challenges are necessary to narrow an overly broad statute. Absent facial challenges to overbreadth, then, "the contours of [a statute] would have to be hammered out case by case--and tested only by those hardy enough to risk criminal prosecution to determine the [statute's] proper scope." Dombrowski v. Pfister, 380 U.S. at 487, 85 S.Ct. at 1121.
 
 
 12
 The Supreme Court has indicated that there may sometimes be strong policy reasons against applying the overbreadth doctrine in a facial review of a statute's constitutionality. See Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A major exception to this approach, however, is in the area of first amendment rights. See, e.g., Stoianoff v. Montana, 695 F.2d 1214, 1218 (9th Cir.1983). In the case of an ordinary facial challenge to the overbreadth of a law, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted). See also Kolender v. Lawson, --- U.S. ----, ---- n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983); Stoianoff v. Montana, 695 F.2d at 1218; Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943, 946 (11th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982). The Supreme Court's decision in Broadrick, however, "implies that a finding of substantial overbreadth is necessary only when the challenged statute regulates conduct and not speech." Turchick v. United States, 561 F.2d 719, 722 (8th Cir.1977). In first amendment overbreadth cases, "a challenge to a statute regulating pure speech would succeed on a lesser showing of facial overbreadth." Id. at 722 n. 6.
 
 
 13
 For these reasons, then, we do not hesitate to entertain plaintiffs' first amendment facial challenges to House Bill 626.[5]
 
 ABSTENTION
 
 14
 Defendants' general argument that federal courts should abstain from deciding the constitutionality of House Bill 626 until the Washington state courts first have an opportunity to construe its provisions was rejected by the district court. Spokane Arcade, Inc. v. Eikenberry, 544 F.Supp. at 1037. We will reverse the district court on the issue of abstention only when there has been an abuse of discretion. See, e.g., Midkiff v. Tom, 702 F.2d 788, 789 n. 1, 799 (9th Cir.1983); Turf Paradise, Inc. v. Arizona Downs, 670 F.2d 813, 819 (9th Cir.), cert. denied, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982); Shamrock Dev. Co. v. City of Concord, 656 F.2d 1380, 1385 (9th Cir.1981). We find that the district court correctly held that abstention would be inappropriate.
 
 
 15
 We begin with the settled proposition that "a federal court must decide the cases properly before it; abstention from the exercise of jurisdiction is the exception to the rule." Midkiff v. Tom, 702 F.2d at 789 n. 1. See also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); Shamrock Dev. Co. v. City of Concord, 656 F.2d at 1385. Indeed, constitutional challenges based on the first amendment right of free expression are the kind of cases that federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when first amendment rights are at stake. See Spokane Arcades, Inc. v. Brockett, 631 F.2d at 137. See also Vance v. Universal Amusement Co., Inc., 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); Zwickler v. Koota, 389 U.S. at 252, 88 S.Ct. at 397.
 
 
 16
 Nonetheless, defendants argue that abstention under the Pullman doctrine is appropriate in this case. Railroad Commission v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). Even a cursory analysis of the three Pullman factors, however, explains why Pullman abstention is rarely, if ever, appropriate in first amendment cases. To abstain under Pullman, a federal court must find that all three of the following factors are applicable: first, that the suit touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative for adjudication exists; second, that a definitive ruling on the state issue in question would end the controversy; and third, that the possibly determinative issue of state law is doubtful. See, e.g., Midkiff v. Tom, 702 F.2d at 789 n. 1; Canton v. Spokane School District No. 81, 498 F.2d 840, 845 (9th Cir.1974). See also Colorado River Water Conservation District v. United States, 424 U.S. at 814, 96 S.Ct. at 1244; Knudsen Corp. v. Nevada State Dairy Commission, 676 F.2d 374, 377 (9th Cir.1982). In first amendment cases, the first of these factors will almost never be present because the constitutional guarantee of free expression is, quite properly, always an area of particular federal concern. See, e.g., C-Y Development Co. v. City of Redlands, 703 F.2d 375, 381 (9th Cir.1983) (citations omitted) ("[T]he Supreme Court has demonstrated a reluctance to order abstention in cases involving certain civil rights claims, such as voting rights, racial equality, and first amendments rights of expression."); Jones v. Metzger, 456 F.2d 854, 856 (6th Cir.1972) ("Even if a viable option were available to [plaintiffs] under state law, it is well-established ... that when fundamental civil rights are at issue, federal courts should hesitate to abstain."); Hobbs v. Thompson, 448 F.2d 456, 463 (5th Cir.1971) ("[I]n a facial attack [on first amendment grounds] the special circumstances which have been held to justify abstention ... are usually absent.").
 
 
 17
 Moreover, abstention by federal courts in first amendment cases could often result in the suppression of free speech that is meant to be protected by the Constitution. As the Supreme Court has emphasized, to abstain and thus "force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." Zwickler v. Koota, 389 U.S. at 252, 88 S.Ct. at 397-98. See also Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) ("[W]e are mindful of the high cost of abstention when the federal constitutional challenge concerns facial repugnance to the First Amendment."); Garvin v. Rosenau, 455 F.2d 233, 239 (6th Cir.1972) ("Further delay necessitated by abstention would be inconsistent with the policy of protecting the First Amendment against possible chilling influences.").
 
 
 18
 Even if this were a case that did not involve first amendment rights, Pullman abstention would still be inappropriate. The second and third Pullman factors suggest that abstention is only proper when a federal constitutional issue may be avoided or presented differently once a state law issue is resolved or a state statute is construed. See, e.g., Spokane Arcades, Inc. v. Brockett, 631 F.2d at 137. In this case, we find that several key provisions of House Bill 626 are not susceptible to such saving constructions. Consequently, Pullman abstention would neither eliminate nor materially change the constitutional issues presented here. See, e.g., Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 481, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1976); Spokane Arcades, Inc. v. Brockett, 631 F.2d at 137. In short, "the naked question, uncomplicated by an unresolved state law, is whether the [statute] on its face is unconstitutional." Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971). Abstention would not have been appropriate.
 
 
 19
 We therefore find that the district court did not abuse its discretion in deciding plaintiffs' claims on their merits.[6]PLAINTIFFS' CONSTITUTIONAL CHALLENGES
 
 
 20
 I. The Definition of Obscenity in House Bill 626 Unconstitutionally Includes Protected First Amendment Expression.
 
 A.
 
 21
 The judicial effort to find an acceptable definition for obscenity constitutes one of the longest and most arduous struggles in the history of American jurisprudence. After employing several different definitions, the Supreme Court finally adopted a three-part test in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Under the Miller test, speech is obscene and thus not protected under the first amendment if three guidelines are satisfied:
 
 
 22
 (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.
 
 
 23
 413 U.S. at 24, 93 S.Ct. at 2615 (citations omitted).
 
 
 24
 Despite the continued adherence to the Miller test, few would disagree with the view that only a "dim and uncertain line" separates obscenity from constitutionally protected speech. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963). As Justices Brennan, Stewart and Marshall remarked, "one cannot say with certainty that material is obscene until at least five members of [the Supreme] Court, applying inevitably obscure standards, have pronounced it so." Jenkins v. Georgia, 418 U.S. 153, 164-65, 94 S.Ct. 2750, 2757, 41 L.Ed.2d 642 (1974) (Brennan, Stewart and Marshall, JJ., concurring), quoting Paris Adult Theatre I v. Slaton, 413 U.S. 49, 92, 93 S.Ct. 2628, 2652, 37 L.Ed.2d 446 (1973) (Brennan, J., dissenting). Yet, on one side of the Miller line, speech is entitled to the highest form of protection afforded by our laws and constitution, while, on the other side, speech that is held obscene may be punished as a crime.
 
 
 25
 Because of the inevitable uncertainty as to where the line will be drawn and the critical importance of not interfering with constitutionally protected speech, courts have insisted that the Miller guidelines be followed without deviation. See, e.g., Hamling v. United States, 418 U.S. 87, 114, 94 S.Ct. 2887, 2906, 41 L.Ed.2d 590 (1974) ("Miller ... was speaking in terms of substantive constitutional law of the First and Fourteenth Amendments ... [and establishes] a limit beyond which neither legislative draftsmen nor juries may go ....").[7] When the Miller guidelines were adopted, the Supreme Court emphasized that "[s]tate statutes designed to regulate obscenity must be carefully limited. As a result, we now confine the permissible scope of such regulation to works" that satisfy the three-part test. Miller, 413 U.S. at 2324, 93 S.Ct. at 2614 (emphasis added, citation omitted). To assure that protected speech is not impermissibly regulated, then, even subtle deviations from the Miller standards must be carefully examined.
 
 
 26
 The first requirement under Miller is that the average person, applying contemporary community standards, would find "that the work, taken as a whole, appeals to the prurient interest." Miller, 413 U.S. at 24, 93 S.Ct. at 2615. Section 1(2)(a) of the Washington anti-obscenity law tracks the Miller prurient interest requirement almost exactly. Section 1(8), however, defines "prurient" as "that which incites lasciviousness or lust." Plaintiffs contend that the inclusion of "lust" in the definition of "prurient" impermissibly expands the boundaries of the Miller guidelines and renders House Bill 626 unconstitutional. We agree.
 
 
 27
 The Supreme Court first attempted to define "prurient" in a footnote in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The Court began by noting that "material having a tendency to excite lustful thoughts" was an example of material "appealing to prurient interest." Roth, 354 U.S. at 487 n. 20, 487, 77 S.Ct. at 1310 n. 20, 1310. Next the Court referred to the Webster's New International Dictionary (Unabridged, 2d ed., 1949), which defined "prurient" as "[i]tching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd...." Ultimately, however, the Court concluded its analysis by stating that there was "no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, Sec. 207.10(2) (Tent. Draft No. 6, 1957)." Roth, 354 U.S. at 487 n. 20, 77 S.Ct. at 1310 n. 20. That section of the A.L.I.'s Model Penal Code defined an item as obscene "if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion...."
 
 
 28
 Both the district court and defendants contend that Roth's definition of "prurient interest" included the concept of "lust." See, e.g., Spokane Arcades, Inc. v. Eikenberry, 544 F.Supp. at 1038 ("Roth in actuality settled upon a shortened definition [of prurient interest], i.e., 'material having a tendency to incite lustful thoughts.' "). Although there may be some initial appeal to this argument, we note that the discussion in Roth actually concluded with the A.L.I. Model Penal Code definition--one that defined a "prurient interest" as "shameful or morbid" and that did not include "lust" either expressly or within the meaning of the words used in the definition. See, e.g., Goldstein v. Allain, 568 F.Supp. 1377 (N.D.Miss.1983) ("Roth and Miller attributed to the term 'prurient interest' a specific judicial meaning--that of a shameful and morbid interest in nudity, sex, or excretion.").
 
 
 29
 While we do not believe the Supreme Court intended in Roth to equate "lust" with "prurient interest," we also recognize that the meaning of words changes as a result of contemporary usage. Obscenity jurisprudence--based as it has been on contemporary community standards and changing social mores--is an extremely fluid area of law. See, e.g., Red Bluff Drive-In, Inc. v. Vance, 648 F.2d 1020, 1029 n. 7 (5th Cir.1981), cert. denied, 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982). The connotations that accompanied the word "lust" in 1957, when Roth was decided, are not necessarily the same ones that attach to the word today. For example, the most recent edition of Webster's New International Dictionary (Unabridged, 3d ed., 1976) no longer includes the word "lust" in its definition of "prurient." Indeed, the word has acquired such acceptable connotations that, prior to his election in 1976, presidential candidate Jimmy Carter confessed in a popular national publication that he had "looked on a lot of women with lust [and] ... committed adultery in my heart many times." "Playboy Interview: Jimmy Carter," Playboy, Nov. 1976, at 86. We do not think that President Carter was describing a shameful or morbid interest; rather, he was obviously expressing a healthy, wholesome, human reaction common to millions of well-adjusted persons in our society. Certainly, we think it clear that is how the country understood his remark, and how the term "lust" is generally perceived today.
 
 
 30
 Court decisions since Roth have implicitly recognized the changing meanings of the words used to define obscenity. The Miller decision, which supplies the Supreme Court's most recent definition of obscenity, has replaced the definitions offered in Roth. In Miller, the Supreme Court makes no reference to the term "lust." To the contrary, the Miller Court refers solely to the definition of obscenity offered in the A.L.I.'s 1962 Official Draft of the Model Penal Code. 413 U.S. 18 n. 2, 93 S.Ct. at 2612 n. 2. The section of the Code cited by the Court defines "prurient interest" as "a shameful or morbid interest in nudity, sex or excretion." A.L.I. Model Penal Code Sec. 251.4(1) "Obscene Defined." (Official Draft 1962). Other courts that have considered the issue have followed the Supreme Court's instructions in Miller and defined "prurient interest" as "shameful or morbid" and not as "lustful." See, e.g., Red Bluff Drive-In, Inc. v. Vance, 648 F.2d at 1026;[8] United States v. 35 MM. Motion Picture Film Entitled "Language of Love," 432 F.2d 705, 711 (2d Cir.1970), cert. denied, 403 U.S. 925, 91 S.Ct. 2241, 29 L.Ed.2d 704 (1971); Goldstein v. Allain, 568 F.Supp. 1377 (N.D.Miss., 1983); Leech v. American Booksellers Association, Inc., 582 S.W.2d 738, 749-50 (Tenn.1979).
 
 
 31
 We agree with these decisions and reaffirm that, under the first prong of the Miller test, a "prurient interest" is "a shameful or morbid interest in nudity, sex or excretion." By including "lust" in its definition of "prurient," the Washington state legislature has clearly exceeded the established--though sometimes blurred--boundaries drawn by the Supreme Court to distinguish protected first amendment expression from that which is obscene.
 
 
 32
 Indeed, to permit expression that merely excites "lust" to be regulated by the state would destroy the boundaries between protected and unprotected speech. To the contemporary jury, "lust" is unlikely to connote anything more than "sexual desire." Webster's Third New International Dictionary (Unabridged, 3d ed., 1976); see also The Random House Dictionary of the English Language (Unabridged, 1979) ("lust" defined as "sexual desire or appetite"). See, e.g., Goldstein v. Allain, 568 F.Supp. 1377, at 1385 (N.D.Miss.1983) ("The inclusion of the terms lustful and erotic [in the Mississippi anti-obscenity statute's definition of prurient interest] would permit the application of the statute to arguably protected materials. Such an intrusion into the area of protected speech is impermissible."). Expression that may merely stimulate sexual longing or desire is entitled to the full range of first amendment protections and cannot constitutionally be branded as obscene.[9]
 
 
 33
 We agree with the Second Circuit's conclusion "that the Supreme Court has never intended to brand as 'obscene' representations of sexual matters which do not import a debasing, 'shameful or morbid' quality into the expression or depiction of human sexuality. To conclude otherwise would be to suggest that the human body and its functions are in themselves somehow 'dirty' or unspeakably offensive." United States v. 35 MM. Motion Picture Film Entitled "Language of Love," 432 F.2d at 711.[10] Such an argument is degrading, and, like the Second Circuit, we reject it. In fact, if the arousal of good, old-fashioned, healthy lust "is equated with an appeal to 'prurient interest,' it might be necessary to hale into court our leading couturiers, perfumers and manufacturers of soft drinks, soap suds and automobiles," 432 F.2d at 712, as well as mainstream stage, movie and television producers, directors and performers. Only by distinguishing between "the arousal of sexual instincts and the perversion of those instincts to morbidity," 432 F.2d at 712, can we ever hope to safeguard from state intrusion the already "dim and uncertain" boundary surrounding protected first amendment expression.
 
 B.
 
 34
 As in all cases involving facial constitutional challenges to state statutes that have not yet been enforced or authoritatively interpreted, we must consider the possibility of a "readily apparent construction [by a state court] ... as a vehicle for rehabilitating the statute[ ] in a single prosecution." Dombrowski v. Pfister, 380 U.S. at 491, 85 S.Ct. at 1123. See also Zwickler v. Koota, 389 U.S. at 251 n. 14, 88 S.Ct. at 397 n. 14 ("the state statute" must be "obviously susceptible of a limiting construction"); Harrison v. NAACP, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959); Stoianoff v. Montana, 695 F.2d at 1218. If it were obvious from a reading of the statute that a state court could in a single prosecution properly construe the statute in a manner that would render it constitutional, our decision on plaintiffs' constitutional challenges would be "render[ed] unnecessary," Zwickler v. Koota, 389 U.S. at 250, 88 S.Ct. at 397, and we would dismiss plaintiffs' challenges. Broadrick, 413 U.S. at 603, 617, 93 S.Ct. at 2911, 2918.
 
 
 35
 In this case, we find it crystal clear that the term "prurient," as used in House Bill 626, includes "lust." It is not possible, under the statute, to give the term a contrary meaning. The statute expressly incorporates the term "lust" in its definition of "prurient."[11] Consequently, a state court would either have to ignore the statutory definition completely or rewrite the statute in order to narrow its unconstitutional scope.
 
 
 36
 Since the state statute is not obviously susceptible to an interpretation that will avoid the federal constitutional issue raised by plaintiffs, it is our duty to decide the constitutional question presented. See, e.g., Zwickler v. Koota, 389 U.S. at 250-51, 88 S.Ct. at 396-97. See also Aptheker v. Sec'y of State, 378 U.S. 500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed.2d 992 (1964) (statute held invalid because "[t]he clarity and preciseness of the provision in question make it impossible to narrow its indiscriminately cast and overly broad scope without substantial rewriting."); Red Bluff Drive-In, Inc. v. Vance, 648 F.2d at 1029 ("If on its face the statute warned too broadly, deference to the state courts would be inappropriate."); Turchick v. United States, 561 F.2d at 724 ("we need not rely on ... a saving construction because we believe the language of the statute is clear."). Cf. Kunz v. New York, 340 U.S. 290, 304, 71 S.Ct. 312, 320, 95 L.Ed. 280 (1951) (Jackson, J., dissenting) ("It may happen that a statute will disclose by its very language that it is impossible of construction in a manner consistent with First Amendment rights.").
 
 C.
 
 37
 Because the definition of obscenity in Washington's anti-obscenity statute unconstitutionally infringes on protected expression, the entire statute must be declared invalid. The application of both civil and criminal penalties under House Bill 626 depends upon a determination that the materials involved are legally obscene. Consequently, an unconstitutionally overbroad definition of obscenity renders House Bill 626 null and void.
 
 
 38
 II. The Civil Fine Provisions of House Bill 626 Unconstitutionally Restrict Protected First Amendment Expression.
 
 
 39
 In view of the State of Washington's previous attempts to deal with obscenity and the fact that the legislature will undoubtedly try again, we believe it advisable to consider one of the other principal aspects of House Bill 626 challenged in these cases: the statute's civil fine provision. We consider this provision because it contains an obviously unconstitutional feature.[12]
 
 
 40
 The civil penalty provision of House Bill 626 is set forth in section 4(2). Once it has been determined "that a defendant has with knowledge maintained a moral nuisance, the court shall impose a civil penalty and judgment of an amount as the court may determine to be appropriate. In imposing the civil penalty, the court shall consider the wilfullness of the defendant's conduct and the profits made by the defendant attributable to the moral nuisance." Unlike the general nuisance statute, Wash.Rev.Code Ann., Sec. 7.48.250 (1961, 1983 Supp.), there is no limit in House Bill 626 on the amount of the civil fine that may be assessed.
 
 
 41
 Plaintiffs challenge the civil penalty provision on a variety of grounds. The one we consider here relates to the requirement that a court must take into account "the profits made by the defendant attributable to the moral nuisance" when setting the amount of the civil fine. The statute defines a "moral nuisance," in three of four instances, as a "place" where obscene materials or behavior may be found.[13] Thus, the civil fine, which is premised in part on profits "attributable to the moral nuisance," may be based on profits from the sale of protected materials in a place that is a moral nuisance solely because obscene materials were also sold or exhibited there. For example, the statute would allow a theater owner who sold $1,000,000 worth of admissions to constitutionally protected films and only $100,000 worth of admissions to films judged legally obscene[14] to be fined on the basis of admissions to all of the films shown. Moreover, the amount of profits from the operation of the entire business is one of only two factors that a judge must consider when setting a civil fine.
 
 
 42
 The procedure for determining civil fines set forth in House Bill 626 is, in our view, unconstitutional. We hold that it is impermissible, in an anti-obscenity statute, to provide that the amount of a fine shall be based, even in part, on the proceeds from constitutionally protected material.
 
 
 43
 We do not question the State of Washington's right to regulate certain nuisances within its boundaries; what we are concerned with is "the consequences for constitutionally protected speech" in the State's efforts. Marcus v. A Search Warrant of Property, 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). Consequently, we apply the familiar requirement that statutes punishing expressive conduct "must be carefully drawn ... to punish only unprotected speech and not be susceptible of application to protected expression." Gooding v. Wilson, 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972). The civil fine provision of House Bill 626 does not satisfy this requirement.
 
 
 44
 Far from being narrowly tailored to the achievement of a permissible state goal, the civil fine provision "sweep[s] unnecessarily broadly and thereby invade[s] the area of protected freedoms." NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964). By focusing on the place where the obscene materials are sold or exhibited rather than the unprotected materials themselves, the civil fine provision endangers protected speech. Courts that have addressed similar issues have held that abatement of a moral nuisance "must be directed to the particular books or films which have been adjudged obscene following a fair and full adversary hearing rather than against the premises in which the material is sold, exhibited, or displayed." People ex rel. Busch v. Projection Room Theater, 17 Cal.3d 42, 56, 130 Cal.Rptr. 328, 338, 550 P.2d 600, 610, cert. denied, 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976). A contrary result would allow the government to punish protected first amendment expression simply because obscene speech was also disseminated from the same place.
 
 
 45
 In fact, the civil fine provision of House Bill 626 is similar in one important respect to the so-called anti-obscenity "padlocking statutes". These padlocking statutes typically provide for the closure of a place of business after a judicial determination that obscene materials have been disseminated from that location. They have consistently been declared unconstitutional because they constitute impermissible prior restraints on free expression. See, e.g., Universal Amusement Co., Inc. v. Vance, 587 F.2d 159, 164-66 (5th Cir.1978) (en banc), and cases cited therein, aff'd, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); People ex rel. Busch v. Projection Room Theater, 17 Cal.3d at 42, 130 Cal.Rptr. 328, 550 P.2d 600; General Corp. v. State ex rel. Sweeton, 294 Ala. 657, 320 So.2d 668 (1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); Sanders v. State, 231 Ga. 608, 203 S.E.2d 153 (1974); Gulf States Theaters of Louisiana, Inc. v. Richardson, 287 So.2d 480 (La.1973); State ex rel. Andrews v. Chateau X, Inc., 296 N.C. 251, 250 S.E.2d 603 (1979), vacated on other grounds, 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980); Mitchem v. State ex rel. Schaub, 250 So.2d 883 (Fla.1971); New Riviera Arts Theatre v. State ex rel. Davis, 219 Tenn. 652, 412 S.W.2d 890 (1967); State v. A Motion Picture Entitled "The Bet," 219 Kan. 64, 547 P.2d 760 (1976). Of course, the familiar presumption against prior restraints constitutes the principal rationale for these decisions. See, e.g., Near v. Minnesota, 283 U.S. 697, 711-15, 51 S.Ct. 625, 629-30, 75 L.Ed. 1357 (1931); Bantam Books, Inc. v. Sullivan, 372 U.S. at 70-71, 83 S.Ct. at 639-640. We also think it crucial, however, that the padlocking statutes have the effect of preventing the dissemination of protected speech simply because obscene speech originated from the same location. In our view, the civil fine provision of House Bill 626--which prescribes punishment based on the profits from protected materials that were sold or exhibited in the same place as obscene materials--is no less objectionable. It may be argued that the protected speech is not being punished but that it only serves as a measure of the appropriate punishment. Such an argument is not persuasive. The crucial point is that free speech is far too sensitive a subject matter to serve as the measurement for civil or criminal penalties.
 
 
 46
 Moreover, it appears that the civil fine provision of House Bill 626 treats businesses disseminating both protected and unprotected speech differently from the way other businesses are treated under other statutes imposing civil fines. Defendants do not point to any other Washington State statutes that base the amounts of fines on the profits from an entire business when only a part of that business is unlawful. Although we have not conducted an independent analysis of the entire body of Washington law, our sampling of various civil fine provisions has revealed no provision similar to that contained in House Bill 626. To the contrary, the statutes we have examined, including Washington's general nuisance statute, Wash.Rev.Code Ann., Sec. 7.48.250 (1961; 1983 Supp.), merely establish the minimum and maximum amounts of civil penalties.
 
 
 47
 Differential treatment of first amendment activity with respect to the imposition of fines is prohibited by the Constitution. In Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue, --- U.S. ----, 103 S.Ct. 1365, 1375, 75 L.Ed.2d 295 (1983) the Supreme Court struck down a state use tax that provided for differential treatment of the press. As the Court emphasized, "differential treatment, unless justified by some special characteristic of the press, suggests that the goal of the regulation is not unrelated to suppression of expression, and such a goal is presumptively unconstitutional." Id. at 1372. The Court's reasoning is as applicable to fines as taxes.
 
 
 48
 The basing of fines on profits from the sale or exhibition of constitutionally protected materials is unnecessary to the achievement of any legitimate state goal. Thus, the presumption of unconstitutionality cannot be rebutted here. See, e.g., Minneapolis Star & Tribune Co., 103 S.Ct. at 1372 (differential taxation of first amendment businesses is unconstitutional "unless the State asserts a counterbalancing interest of compelling importance that it cannot achieve without differential taxation."). In support of our conclusion, we note that in the criminal penalty provision of House Bill 626, the Washington legislature authorized monetary sanctions based solely on profits from the sale of constitutionally unprotected materials. The criminal penalty provision requires the court to consider "the profits made by the defendant attributable to the felony," with the felony defined as the promotion of pornography. It is therefore evident that in enacting the civil fine provision, the State of Washington could have achieved its legislative goals by more carefully tailored means that would be less restrictive of free expression. See, e.g., Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).
 
 
 49
 We do not see any readily apparent construction that could save the civil fine provision. See supra, 725 F.2d at 494. As with the statute's definition of "prurient," state courts would have to ignore or rewrite the explicit language of the provision in order to salvage House Bill 626. Consequently, we find that the civil fines section of the Washington anti-obscenity law is unconstitutional.
 
 CONCLUSION
 
 50
 The Washington state anti-obscenity statute adopts an unconstitutionally broad definition of obscenity. We must therefore hold the statute unconstitutional. We also hold that the statute's civil fines provision impermissibly restricts protected speech.
 
 
 51
 REVERSED.
 
 APPENDIX
 House Bill 626 provides, in relevant part:
 
 52
 Section 1. The definitions set forth in this section shall apply throughout this chapter.
 
 
 53
 (1) "Knowledge" or "knowledge of such nuisance" means having knowledge of the contents and character of the patently offensive sexual or violent conduct which appears in the lewd matter, or knowledge of the acts of lewdness or prostitution which occur on the premises.
 
 
 54
 (2) "Lewd matter" is synonymous with "obscene matter" and means any matter:
 
 
 55
 (a) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest; and
 
 
 56
 (b) Which explicitly depicts or describes patently offensive representations or descriptions of:
 
 
 57
 (i) Ultimate sexual acts, normal or perverted, actual or simulated; or
 
 
 58
 (ii) Masturbation, fellatio, cunnilingus, bestiality, excretory functions, or lewd exhibition of the genitals or genital area; or
 
 
 59
 (iii) Violent or destructive sexual acts, including but not limited to human or animal mutilation, dismemberment, rape or torture; and
 
 
 60
 (c) Which, when considered as a whole, and in the context in which it is used, lacks serious literary, artistic, political, or scientific value.
 
 
 61
 (3) "Lewdness" shall have and include all those meanings which are assigned to it under the common law.
 
 
 62
 (4) "Matter" shall mean a motion picture film or a publication or both.
 
 
 63
 (5) "Motion picture film" shall include any:
 
 
 64
 (a) Film or plate negative;
 
 
 65
 (b) Film or plate positive;
 
 
 66
 (c) Film designed to be projected on a screen for exhibition;
 
 
 67
 (d) Film, glass slides, or transparencies, either in negative or positive form, designed for exhibition by projection on a screen;
 
 
 68
 (e) Video tape or any other medium used to electronically reproduce images on a screen.
 
 
 69
 (6) "Person" means any individual, partnership, firm, association, corporation, or other legal entity.
 
 
 70
 (7) "Place" includes, but is not limited to, any building, structure, or places, or any separate part or portion thereof, whether permanent or not, or the ground itself.
 
 
 71
 (8) "Prurient" means that which incites lasciviousness or lust.
 
 
 72
 (9) "Publication" shall include any book, magazine, article, pamphlet, writing, printing, illustration, picture, sound recording, or coin-operated machine.
 
 
 73
 (10) "Sale" means a passing of title or right of possession from a seller to a buyer for valuable consideration, and shall include, but is not limited to, any lease or rental arrangement or other transaction wherein or whereby any valuable consideration is received for the use of, or transfer of possession of, lewd matter.
 
 
 74
 Section 2. The following are declared to be moral nuisances:
 
 
 75
 (1) Any and every place in the state where lewd films are publicly exhibited as a regular course of business, or possessed for the purpose of such exhibition;
 
 
 76
 (2) Any and every lewd film which is publicly exhibited, or possessed for such purpose at a place which is a moral nuisance under this section;
 
 
 77
 (3) Any and every place of business in the state in which lewd publications constitute a principal part of the stock in trade;
 
 
 78
 (4) Every place which, as a regular course of business, is used for the purpose of lewdness or prostitution, and every such place in or upon which acts of lewdness or prostitution are conducted permitted, carried on, continued, or exist.
 
 
 79
 Section 3. Any of the following parties may bring a civil action in the superior court of any county where a moral nuisance is alleged to have been maintained:
 
 
 80
 (1) The prosecuting attorney for the county where the alleged moral nuisance is located;
 
 
 81
 (2) The city attorney for the city where the alleged moral nuisance is located; or
 
 
 82
 (3) The attorney general.
 
 
 83
 The rules of evidence, burden of proof, and all other rules of court shall be the court rules generally applicable to civil cases in this state: PROVIDED, That the standard of proof on the issue of obscenity shall be clear, cogent, and convincing evidence.
 
 
 84
 Section 4. (1) No person shall with knowledge maintain a moral nuisance.
 
 
 85
 (2) Upon a determination that a defendant has with knowledge maintained a moral nuisance, the court shall impose a civil penalty and judgment of an amount as the court may determine to be appropriate. In imposing the civil penalty, the court shall consider the wilfulness of the defendant's conduct and the profits made by the defendant attributable to the moral nuisance.
 
 
 86
 Section 5. All civil penalties assessed under section 4 of this act shall be paid into the general treasury of the governmental unit commencing the civil action.
 
 
 87
 Section 6. Nothing in this chapter applies to the circulation of any material by any recognized historical society or museum, any library of any college or university, or to any archive or library under the supervision and control of the state, county, municipality, or other political subdivision.
 
 
 88
 Section 7. Sections 1 through 6 of this act shall constitute a new chapter in Title 7 RCW.
 
 
 89
 Section 8. There is added to chapter 9.68 RCW a new section to read as follows:
 
 
 90
 A person who, for profit-making purposes and with knowledge, sells, exhibits, displays, or produces any lewd matter as defined in section 1 of this act is guilty of promoting pornography. Promoting pornography is a class C felony and shall bear the punishment prescribed for that class of felony, except that upon conviction of promoting pornography the court shall impose a fine of not less than five thousand dollars per count nor more than fifty thousand dollars per count. In imposing the criminal penalty, the court shall consider the wilfulness of the defendant's conduct and the profits made by the defendant attributable to the felony. All fines assessed under this chapter shall be paid into the general treasury of the state.
 
 
 91
 Section 9. If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.
 
 
 92
 Section 10. This act is necessary for the immediate preservation of the public peace, health, and safety, the support of the state government and its existing public institutions, and shall take effect immediately.
 
 WALLACE, Circuit Judge, dissenting:
 
 93
 Rejecting prudential approaches that would allow us to await application of this statute to a concrete factual situation, the majority finds House Bill 626 unconstitutionally overbroad on its face because its drafters, following the Supreme Court's language in Roth v. United States, 354 U.S. 476, 486, 487 n. 20, 77 S.Ct. 1304, 1310 n. 20, 1 L.Ed.2d 1498 (1957) (Roth), used the word "lust" to help define prurient interest. The majority concludes that "[t]he application of both civil and criminal penalties under House Bill 626 depends on a determination that the materials involved are legally obscene. Consequently, an unconstitutionally overbroad definition of obscenity renders House Bill 626 null and void." Despite having done all it may do as a court, however, the majority goes on to assert that "because the legislature will undoubtedly try again, we believe it advisable to discuss ... the statute's civil fine provision .... because it contains an obviously unconstitutional feature."
 
 
 94
 What follows that statement is merely advisory. Were it a holding, I would concur: the civil fine provision is overbroad and incapable of a saving construction. Even the majority's prior restraint argument would have force on this issue. See, e.g., Jeffries, Rethinking Prior Restraint, 92 Yale L.J. 409, 412 (1983); see generally Vance v. Universal Amusement Co., 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). But neither this advice to the state legislature, nor the discussion of it, amounts to an alternative holding. The actual holding of the majority strikes down the whole House Bill 626. The majority's dicta would not reach a similar conclusion; instead, it would strike down only a portion of the statutory scheme, leaving the rest intact. In that sense it is not an alternative way of reaching a result, but an answer to a different, and lesser, question. An outcome-determinative test shows the majority's conclusion about the unconstitutionality of the civil fines cannot be a true alternative holding. Had the majority correctly decided that the mere use of "lust" is not facially overbroad, the remaining "alternative holding" would not allow the appeal to come out the same way on the validity of the statute as a whole. See Lucas, The Direct and Collateral Estoppel Effects of Alternative Holdings, 50 U.Chi.L.Rev. 701, 703 (1983). Because the civil fine discussion is dictum, I do not vote upon it. I do dissent, however, from the part of the majority opinion that is a holding.
 
 
 95
 The current limits on obscenity legislation, state or federal, appear generally in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (Miller). That case did not reject all that had gone before, or limit scripturally all that would come after. See, e.g., id. at 24 n. 6, 93 S.Ct. at 2615 n. 6. In explaining the term "obscene material," Miller affirmed that the words "have a specific judicial meaning which derives from the Roth case, i.e., obscene material 'which deals with sex.' Roth, supra, [354 U.S.] at 487 [77 S.Ct. at 1310]. See also ALI Model Penal Code Sec. 251.4(1) 'Obscene Defined.' (Official Draft 1962)." Miller, 413 U.S. at 18 n. 2, 93 S.Ct. at 2612 n. 2. The Court's opinion, id. at 24, 93 S.Ct. at 2614, also looked back to Roth for help in defining the permissible scope for state regulation of obscene material: "whether 'the average person, applying contemporary community standards,' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, supra [408 U.S. 229], at 230 [92 S.Ct. 2245, at 2246, 33 L.Ed.2d 312], quoting Roth v. United States, supra, [354 U.S.], at 489 [77 S.Ct. at 1311]."
 
 
 96
 In reaffirming that the first amendment does not protect obscene material, Miller clearly indicates that Roth provides the chief source for understanding "prurient interest." Only in Roth, and in no other opinion, did the Court explain the term:
 
 
 97
 Obscene material is material which deals with sex in a manner appealing to prurient interest.[20]
 
 
 98
 354 U.S. at 487 & n. 20, 77 S.Ct. at 1310 & n. 20 (emphasis added).
 
 
 99
 It is thus clear in Roth, unchanged by Miller, that "lustful thoughts" can be a part of the "prurient interest" definition. The majority would eliminate that part of Roth in order to arrive at its conclusion that the State of Washington may not constitutionally include "lust" as even a part of its definition.
 
 
 100
 First, the majority argues that the direct citation to "lustful thoughts" means nothing because the Roth footnote ends by citing the Model Penal Code. But why? Would not the reverse of this argument make as much sense: because the Court begins by citing "lustful thoughts," the rest of the footnote means nothing?
 
 
 101
 The better interpretation is to read the footnote as a whole. Indeed, as the Court's reference in the footnote to "no significant difference in meaning" hints, the footnote catalogues different ways to describe the same concept. The reference to lust describes prurient interest as much as does the reference to the Model Penal Code. See, e.g., Feinberg, Pornography and the Criminal Law, 40 U.Pitt.L.Rev. 567, 585 (1979) (interpreting obscenity in Roth with reference to the "appeal to prurient interest" clause: obscenity means "whatever is produced for the sole purpose of arousing lustful thoughts ....").
 
 
 102
 No doubt the Supreme Court has often addressed the Model Penal Code's definition of prurient interest because states have often enacted it. See, e.g., Ward v. Illinois, 431 U.S. 767, 771, 97 S.Ct. 2085, 2088, 52 L.Ed.2d 738 (1977) (Ill.Rev.Stat. c. 38, Sec. 11-20(b)); S.S. & W., Inc. v. Kansas City, 421 U.S. 925, 925, 95 S.Ct. 1650, 1650, 44 L.Ed.2d 83 (1975) (Kansas City Ord. Sec. 26.141) (Brennan, J., dissenting from dismissal of the appeal for want of a substantial federal question); Jenkins v. Georgia, 418 U.S. 153, 154-55, 94 S.Ct. 2750, 2752, 41 L.Ed.2d 642 (1974) (Ga.Code Ann. Sec. 26-2101); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 51 n. 1, 93 S.Ct. 2628, 2632 n. 1, 37 L.Ed.2d 446 (1973) (Ga.Code Ann. Sec. 26-2101); Miller, 413 U.S. at 16 n. 1, 93 S.Ct. at 2611 n. 1 (Cal.Penal Code Sec. 311.2(a)). That does not mean the Court has abandoned Miller's adoption of the Roth definition. The Supreme Court has never held that the Model Penal Code provides the only acceptable definition. States may choose other ways to define appeals to the prurient interest. Cf. Smith v. United States, 431 U.S. 291, 310, 97 S.Ct. 1756, 1769, 52 L.Ed.2d 324 (1977) (Powell, J., concurring) (states have power to design their obscenity statutes as they see fit; "Within the boundaries staked out by Miller, the states retain broad latitude ...."). Indeed, that is what has occurred.
 
 
 103
 In accepting this latitude to define, some states have not followed the Model Penal Code but have, as identified in Miller itself, 413 U.S. at 24 & n. 6, 93 S.Ct. at 2615 & n. 6, listed particular depictions of physical conduct. See, e.g., id. (1971 Ore.Laws, c. 743, art. 29, Secs. 255-262; 1972 Hawaii Sess.Laws, Act 9, c. 12, pt. II, at 126-29); see also Young v. American Mini Theatres, 427 U.S. 50, 53 & n. 4, 96 S.Ct. 2440, 2444 & n. 4, 49 L.Ed.2d 310 (1976) (Detroit zoning ordinance). Other states have chosen, by using language like that in the Roth footnote, a third way to define appeal to the prurient interest. The Ohio legislature devised the following alternative definitions:
 
 
 104
 "(A) Any material or performance is 'obscene' if, when considered as a whole and judged with reference to ordinary adults, any of the following apply:
 
 
 105
 "(1) Its dominant appeal is to prurient interest;
 
 
 106
 "(2) Its dominant tendency is to arouse lust by displaying or depicting nudity, sexual excitement, or sexual conduct in a way which tends to represent human beings as mere objects of sexual appetite;
 
 
 107
 "(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;
 
 
 108
 "(4) It contains a series of displays or descriptions of nudity, sexual excitement, sexual conduct, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than for a genuine scientific, educational, sociological, moral, or artistic purpose." Ohio Rev.Code Ann. Sec. 2905.34 (Supp.1972), now Ohio Rev.Code Ann. Sec. 2907.01 (1975).
 
 
 109
 See Art Theatre Guild, Inc. v. Ewing, 421 U.S. 923, 923-24, 95 S.Ct. 1649, 1649, 44 L.Ed.2d 82 (1975) (Brennan, J., dissenting from dismissal for want of a substantial federal question) (emphasis added). The state courts enjoined the showing of a film under this statute. The Supreme Court dismissed an appeal from the injunction. Id. at 923, 95 S.Ct. at 1649. Although the Court clearly had the "ultimate power ... to conduct an independent review of [any] constitutional claims," Miller, 413 U.S. at 25, 93 S.Ct. at 2615, it saw no substantial federal question raised despite the use of the word "lust." See also State ex rel. Keating v. "Vixen", 35 Ohio St.2d 215, 301 N.E.2d 880 (1973) (without construing the Ohio statutes in any way, holding they comport with Miller).
 
 
 110
 Nebraska's definition of obscenity, Neb.Rev.Stat. Sec. 28-926.07 (1964), incorporates language from Roth and the Model Penal Code as alternatives. The statute asks whether the dominant theme of material "appeals to the prurient interest, which is to excite lustful thoughts, or a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond the customary limits of candor." Id. (emphasis added). Ordered to reconsider a conviction under section 28-926.07 in light of Miller, the Nebraska Supreme Court found "the Nebraska statutes fully comply with the requirements of Miller v. California .... We have not given them a new or different construction [to reach that conclusion] ...." State v. Little Art Corp., 191 Neb. 448, 215 N.W.2d 853, 856, on remand from 414 U.S. 1151, 94 S.Ct. 907, 39 L.Ed.2d 105 (1974). See Note, Community Standards, Class Actions, and Obscenity Under Miller v. California, 88 Harv.L.Rev. 1838, 1847 n. 51 (1975). Notably, the court considered "lust" and "lasciviousness" equivalent: "The word prurient in its application to obscenity means 'tending to excite lasciviousness' and lasciviousness means the presence or arousal of sexual desire. Similarly applied to obscenity the word lustful refers to sexual desire." Id.
 
 
 111
 In Georgia, although the statute tracks the Model Penal Code definition of obscenity, the courts have recently defined material appealing to the prurient interest as "material which has a tendency to excite lustful thoughts." Spry v. State, 156 Ga.App. 74, 274 S.E.2d 2, 5 (Ga.App.1980) (emphasis added). A jury instruction along those lines "simply gave the jury a better understanding of the meaning of prurient appeal. See Roth v. United States, 354 U.S. 476, 477(4), 487 [77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498] ...." Spry v. State, 274 S.E.2d at 5.
 
 
 112
 It would appear, therefore, that neither the Supreme Court nor state courts have abandoned the use of the term "lust" in proscribing obscenity under the first amendment. The Model Penal Code definition, although helpful, has not been decreed the only acceptable method of defining prurient interest.
 
 
 113
 The majority's other argument is that the meanings of words change, and "lust" no longer aids anyone in defining prurient interest. The scope of obscenity may indeed differ from place to place, time to time, and culture to culture. See, e.g., Richards, Free Speech and Obscenity Law: Toward a Moral Theory of the First Amendment, 123 U.Pa.L.Rev. 45, 53 & n. 52 (1974), citing G. Gorer, The Danger of Equality 218 (1966), and La Barre, Obscenity, An Anthropological Appraisal, 20 Law and Contemp.Prob. 533, 541-42 (1955), (certain southsea island cultures find eating in public obscene). In our obscenity jurisprudence, this concern for changing definitions is met head-on by the criterion of "contemporary community standards," Miller, 413 U.S. at 24, 93 S.Ct. at 2615; Roth, 354 U.S. at 489-90, 77 S.Ct. at 1311-12. See McKinney v. Alabama, 424 U.S. 669, 689-90, 96 S.Ct. 1189, 1200, 47 L.Ed.2d 1189 (1976) (Brennan, J., concurring in the result) ("community standards are inherently in a state of flux ...."). Cf. Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) ("Words inevitably contain germs of uncertainty ...."). The majority, however, finds the Supreme Court's explicit provision for ascertaining change inadequate. Discarding the term "lust" on purely "legal" grounds of changed societal definition usurps the purpose of the "contemporary community standards" test.
 
 
 114
 The majority also forgets that any purely legal definitions in this area are less dependent on particular editions of dictionaries, or on an interview in Playboy magazine,[1] than on the Supreme Court. See, e.g., Miller, 413 U.S. at 18 n. 2, 93 S.Ct. at 2612 n. 2 (words "obscene material" have a specific judicial meaning derived from Roth). The Supreme Court has not adopted the definitional change as embraced by the majority. The Court has used "lust" to help define "prurient interest." Roth, 354 U.S. at 487 n. 20, 77 S.Ct. at 1310 n. 20. The Court has reconfirmed the vitality of this use by citation to Roth. See Miller, 413 U.S. at 18 n. 2, 93 S.Ct. at 2612 n. 2. Cf. Erznoznik v. City of Jacksonville, 422 U.S. 205, 213 n. 10, 95 S.Ct. 2268, 2275 n. 10, 45 L.Ed.2d 125 (1975) ("[T]o be obscene, 'such expression must be, in some significant way, erotic.' "), citing Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971), which, in turn, cites solely Roth. The Supreme Court has not subsequently forbidden the use of "lust" to help define "prurient interest." See Art Theatre Guild, Inc. v. Ewing, 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82. State courts have upheld the use of "lust" since Miller to help define prurient interest. E.g., State v. Little Art Corp., 191 Neb. 448, 215 N.W.2d 853. Therefore, I conclude that the majority is wrong in holding as a matter of law that alleged, but unproven, changes in society's definition of "lust" authorize this court to erase the word from a constitutionally permissible definition. If there has been a change in the community view, it will be expressed in the first prong of the Miller test in assessing contemporary community standards.
 
 
 115
 Dealing with an obscenity definition is not easy work. Often reasonable minds will differ. Indeed, had I been the drafter of the Washington statute, I would have used a different definition. But the question before us is whether, as a matter of law, use of the word "lust" as part of the definition of prurient interest violates the first amendment. I conclude that the majority was wrong in reading "lust" out of the Roth definition as affirmed by Miller and that the majority was wrong in holding, as a matter of law, that the meaning of "lust" has changed so that it may not be a part of the Roth-Miller definition of prurient interest.
 
 
 116
 At worst, Washington's use of "lust" taken from Roth stands subject to construction in light of Miller, which cited that part of Roth sixteen years later. A "limiting" construction is so obvious that, for prudential reasons, we should at least refuse to decide the plaintiffs' constitutional challenges on the basis of Washington's mere use of the word "lust" until a case arises applying the statute. See, e.g., Broadrick v. Oklahoma, 413 U.S. at 613, 93 S.Ct. at 2916; see also Monaghan, Overbreadth, 1981 S.Ct.Rev. 1, 35 (in a declaratory judgment action, the litigant in substance asks "whether the courts will, as a matter of statutory construction, refuse to narrow the statute to constitutional boundaries ...."). Cf. Dombrowski v. Pfister, 380 U.S. 479, 491-92, 85 S.Ct. 1116, 1123-24, 14 L.Ed.2d 22 (1965) (no readily apparent construction could repair the vagueness of the state law in question, so, in the face of threatened prosecutions, plaintiffs received "appropriate equitable relief without awaiting declaratory judgments in the state courts").
 
 
 117
 As another court recently observed, "[w]e must not make it impossible to draft legislation by finding facial overbreadth and ambiguity in all words." Red Bluff Drive-In, Inc. v. Vance, 648 F.2d 1020, 1034 (5th Cir.1981), cert. denied, 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982). The majority, by finding facial overbreadth in the word "lust," forbids Washington to draft legislation based on Supreme Court precedent. The majority, I conclude, is wrong.
 
 
 
 [1]
 The relevant portions of House Bill 626 are reprinted in the Appendix to this opinion
 
 
 [2]
 Throughout these proceedings, various objections have been raised to the standing of a few of the many plaintiffs in the seven consolidated cases. See, e.g., Spokane Arcades, Inc. v. Eikenberry, 544 F.Supp. 1034, 1037 n. 1 (E.D.Wash.1982). In particular, the standing of the American Civil Liberties Union as a plaintiff in one of the cases has been challenged before this Court. The district court's opinion was that "[i]n view of the disposition of this matter, ... the question is largely academic." Id. We share that view. See generally Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), quoting Taggart v. Weinacker's, Inc., 397 U.S. 223, 225, 90 S.Ct. 876, 877, 25 L.Ed.2d 240 (1970) (per curiam); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Gulf Oil Co. v. Federal Regulatory Commission, 706 F.2d 444 (3d Cir.1983)
 It is worth noting however, that the ACLU has standing to sue in this case if any one of its members suffers or is threatened with injuries that would create a justiciable case. See generally Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Black Faculty Association v. San Diego Community College, 664 F.2d 1153 (9th Cir.1981). Because we find that House Bill 626 is unconstitutionally overbroad, it seems likely that some of the ACLU's members would be affected by the statute's impermissible restrictions on protected speech.
 
 
 [3]
 King County Prosecuting Attorney Norm Maleng, a defendant to two of the suits being appealed, raises several objections to the district court's assertion of jurisdiction over him. First, Maleng argues that venue in the Kukio Bay Properties case was improperly transferred from the Western District of Washington, where Maleng performs his official duties, to the Eastern District of Washington, where the various other lawsuits were filed. See 28 U.S.C. Sec. 1404(a) (1976). We disagree. The forum non conveniens determination is committed to the sound discretion of the trial court. We will reverse such a determination only when there has been an abuse of discretion. See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). See also Norwood v. Kirkpatrick, 349 U.S. 29, 31-32, 75 S.Ct. 544, 546-547, 99 L.Ed. 789 (1955) (trial court has more discretion to transfer to another federal court pursuant to Sec. 1404(a) than to dismiss on grounds of forum non conveniens). In this case, the district judge for the Western District of Washington correctly found "that the interests of the parties, convenience to the attorneys, judicial economy, and the public interest are all served by disposing of this matter in one hearing" already scheduled in the Eastern District of Washington
 Second, Maleng contends that the plaintiff in the Playtime Theaters suit owns no theaters or bookstores in King County and thus could not possibly be subject to prosecution by him. In its brief to this court, however, Playtime Theaters, Inc. asserts that it "is a body corporate of the state of Washington operating 35 mm. motion picture theaters in various counties in the State of Washington exhibiting adult film fare to the adult citizens of and/or visitors to the State of Washington." King County is not, however, specifically mentioned as one of these counties. The trial judge, after "being fully appraised of the parties' respective positions," ordered that Playtime "be granted leave to amend its complaint only to the extent necessary to join Norm Maleng ... as an additional defendant." In light of our resolution of this case, we see no present need to decide this factual dispute.
 
 
 [4]
 Under Section Three of the statute, enforcement proceedings may be initiated by the "prosecuting attorney for the county where the alleged moral nuisance is located," by the "city attorney for the city where the alleged moral nuisance is located," or by the state attorney general
 
 
 [5]
 In evaluating a facial challenge, we must also consider whether there are any readily apparent constructions capable of saving the statute, in a single state prosecution, from plaintiffs' constitutional challenges. We discuss this requirement later. See infra, 725 F.2d at pp. 488, 489
 
 
 [6]
 None of the other traditional grounds for abstention is applicable in this case. Under the Burford doctrine, Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), federal courts may decline to exercise jurisdiction when the case involves "an essentially local issue arising out of a complicated state regulatory scheme." International Bhd. of Electrical Workers, Local Union No. 1245 v. Public Serv. Comm'n, 614 F.2d 206, 211 (9th Cir.1980). We have traditionally applied the Burford doctrine to cases where suits involving the local issue have been concentrated in an individual state court and where the federal issues are inextricably bound up with state issues which state courts may be especially competent to deal with. International Bhd., 614 F.2d at 211. Neither of these circumstances is likely to exist in a case involving a first amendment challenge to a state statute, and neither circumstance applies in this case
 Abstention may also be appropriate in certain instances when a federal suit seeks to enjoin a pending or ongoing state proceeding in which federal claims could be adjudicated competently. See, e.g., Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Moore v. Sims, 442 U.S. 415, 423, 425, 99 S.Ct. 2371, 2377, 2378, 60 L.Ed.2d 994 (1979); L.H. v. Jamieson, 643 F.2d 1351, 1352 (9th Cir.1981). It is not necessary to decide whether this is the type of case in which Younger abstention might otherwise be appropriate because, as the State notes, "[n]o one has been prosecuted [and] no civil actions have been filed" pursuant to House Bill 626. See supra, 725 F.2d at 487.
 
 
 [7]
 See also Leech v. American Booksellers Ass'n, Inc., 582 S.W.2d 738, 745 (Tenn.1979) (a court "cannot give constitutional approval to any law expanding the standards for adjudicating obscenity, vel non, beyond the dictates of Miller and its progeny."); State v. Princess Cinema of Milwaukee, 96 Wis.2d 646, 292 N.W.2d 807, 808, 811 (1980) (it was error for a court to "deviate[ ] from the Miller v. California standards."); D & J Enterprises, Inc. v. Michaelson, 401 A.2d 440, 442, 446 (R.I.1979) ("[T]he Miller Court set out a new framework of revised standards to guide the states in separating what is obscene ... from what is not obscene .... [Because t]he act fails to meet the Miller blueprint, [it] must be stricken as constitutionally overbroad.")
 
 
 [8]
 In Red Bluff, the Fifth Circuit held that "the lack of a definition for the term 'prurient interest' does not render the [Texas obscenity] statute constitutionally deficient." 648 F.2d at 1026. Defendants argue that Red Bluff is dispositive here. We disagree. Red Bluff involved a statute that recited, "with little variation, the familiar three-part Miller test" for obscenity. 648 F.2d at 1026. The statute included the term "prurient interest," although no definition was offered. The Fifth Circuit found that a specific provision in Texas law required courts construing the term "to apply any 'technical or particular meaning' the term has acquired from prior judicial review." 648 F.2d at 1026 (citations omitted). Thus, Red Bluff involved a statute that adopted the Miller test exactly but contained no definition whatsoever of "prurient interest;" the proper and constitutional definition was supplied by operation of law. In the case before us, House Bill 626 contains a very explicit definition of "prurient"--one that expressly incorporates an overbroad and unconstitutional definition of that term
 
 
 [9]
 The dissent's reliance on the Supreme Court's order of dismissal in Art Theatre Guild, Inc. v. Ewing, 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82 (1975) is misplaced. A review of the papers submitted to the Court by the parties reveals that neither the appellant nor the appellee even mentioned the Ohio statute's inclusion of the term "lust." Similarly, there is no indication in the Ohio Supreme Court's opinion in the underlying case that the "lust" issue was ever raised before that court. State v. A Motion Picture Film Entitled "Without a Stitch," 37 Ohio St.2d 95, 307 N.E.2d 911 (1974)
 
 
 [10]
 This Second Circuit decision involved an obscenity challenge to a motion picture called "Language of Love." Even though "[t]o the average person ... certain scenes in 'Language of Love' may present a temporary erotic appeal, and the effect may be temporary sexual arousal," 432 F.2d at 711-12, the Second Circuit found that the film did not appeal to the prurient interest and thus was not obscene
 
 
 [11]
 The district court agreed with defendants' argument that Sec. 1(8) of House Bill 626 defines only the word "prurient" and not the term "prurient interest." Consequently, defendants contend that Sec. 1(2)--which incorporates the Miller test, including the term "prurient interest"--can be read independently of the definition of "prurient" in Sec. 1(8). See, e.g., Spokane Arcades, Inc. v. Eikenberry, 544 F.Supp. at 1038-39. If this is the case, defendants argue, the term "prurient interest" can be given its recognized judicial meaning and the word "lust" in Sec. 1(8) can be ignored
 We find this interpretation of House Bill 626 to be completely implausible. To begin with, the word "prurient" is used only twice in the statute: in Sec. 1(8), where it is defined, and in Sec. 1(2)(a), where it is part of the phrase "prurient interest." It would have made no sense for the framers of House Bill 626 to define "prurient" and then never to use the word in the statute. Thus, the only reasonable conclusion is that the definition of "prurient" in Sec. 1(8) is intended to refer to the use of that word the only other time it appears in the statute, in Sec. 1(2)(a). This is also the only conclusion that avoids the untenable result of rendering a portion of the statute--the definition of "prurient" in Sec. 1(8)--completely irrelevant and superfluous.
 In addition, the introduction to Sec. 1 of House Bill 626 explicitly commands that "[t]he definitions set forth in this section shall apply throughout" the entire statute. It makes little sense to argue, then, that a definition of a word provided in Sec. 1(8) does not apply when the same word is used in Sec. 1(2)(a). In fact, the other definitions offered in Sec. 1(3) & (4) also refer to words used in the statute's definition of obscenity in Sec. 1(2). We thus reject as utterly without merit defendants' alternative reading of House Bill 626.
 
 
 [12]
 Our discussion of one aspect of the civil fine provision, and our failure to discuss other important issues, should not be read as intimating any view on the remaining constitutional challenges raised by plaintiffs. We do not here consider plaintiffs' other complaints regarding the dual civil-criminal fine system. In particular, we express no opinion on plaintiffs' other first amendment and eighth amendment challenges to the statute's civil and criminal penalty provisions. Nor do we indicate any view on the district court's two-fold decision that (a) the Constitution requires a jury trial in obscenity cases when civil fines are imposed, and (b) the federal courts need not now determine whether persons against whom such fines are sought would be afforded the right to a jury under Washington law. See Spokane Arcades, Inc. v. Eikenberry, 544 F.Supp. at 1042-43
 
 
 [13]
 According to Section Two of the statute,
 [t]he following are declared to be moral nuisances:
 (1) Any and every place in the state where lewd films are publicly exhibited as a regular course of business, or possessed for the purpose of such exhibition;
 (2) Any and every lewd film which is publicly exhibited, or possessed for such purpose at a place which is a moral nuisance under this section;
 (3) Any and every place of business in the state in which lewd publications constitute a principal part of the stock in trade;
 (4) Every place which, as a regular course of business, is used for the purpose of lewdness or prostitution, and every such place in or upon which acts of lewdness or prostitution are conducted, permitted, carried on, continued, or exist.
 (Emphasis added).
 
 
 [14]
 To qualify as a moral nuisance under Section Two, a theater must "publicly exhibit" obscene films "as a regular course of business" or possess such films for this purpose
 
 
 [20]
 Ie., material having a tendency to excite lustful thoughts. Webster's New International Dictionary (Unabridged, 2d ed., 1949) defines prurient, in pertinent part, as follows:
 "... Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd...."
 Pruriecyis defined, in pertinent part, as follows:
 "... Quality of being prurient; lascivious desire or thought...." See also Mutual Film Corp. v. Industrial Comm'n, 236 U.S. 230, 242, 35 S.Ct. 387, 390, 59 L.Ed. 552, where this Court said as to motion pictures: "... They take their attraction from the general interest, eager and wholesome it may be, in their subjects, but a prurient interest may be excited and appealed to...." (Emphasis added.)
 We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, Sec. 207.10(2) (Tent. Draft No. 6, 1957), viz.:
 "... A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters...." See Comment, id., at 10, and the discussion at page 29 et seq.
 
 
 [1]
 It seems strange that the majority's argument for a different sociological view of lust depends so heavily on President Carter's personal views. Furthermore, the majority has misinterpreted those views. President Carter characterized lust as a sin requiring divine forgiveness, not as something "acceptable" in our community. See Playboy Interview: Jimmy Carter, Playboy, Nov. 1976 at 86:
 "I try not to commit a deliberate sin. I recognize that I'm going to do it anyhow, because I'm human and I'm tempted.....
 I've looked on a lot of women with lust. I've committed adultery in my heart many times. This is something that God recognizes I will do--and I have done it--and God forgives me for it."